1                    IN THE UNITED STATES DISTRICT COURT

2                       FOR THE DISTRICT OF OREGON

3    UNITED STATES OF AMERICA,        )
                                      )
4             Plaintiff,              ) No. CR-05-413-KI
                                      )
5         vs.                         ) January 10, 2011
                                      )
6    MEHRDAD YASREBI (1),             ) Portland, Oregon
     CHILD FOUNDATION (2),            )
7                                     )
              Defendants.             )
8    ------------------------------

9

10

11

12

13

14

15                    **ARRAIGNMENT AND PLEA HEARING**

16                      TRANSCRIPT OF PROCEEDINGS

17                BEFORE THE HONORABLE GARR M. KING

18              UNITED STATES DISTRICT COURT JUDGE

19

20

21

22

23

24

25

```
 1                        APPEARANCES

 2   FOR THE PLAINTIFF:    Charles F. Gorder, Jr.
                           David L. Atkinson
 3                         Assistant United States Attorneys
                           U.S. Attorney's Office
 4                         1000 S. W. Third Avenue
                           Suite 600
 5                         Portland, OR  97204

 6   FOR THE DEFENDANT
     YASREBI:              David H. Angeli
 7                         Angeli Law Group LLC
                           121 S. W. Morrison Street
 8                         Suite 400
                           Portland, OR  97205
 9
     FOR THE DEFENDANT
10   CHILD FOUNDATION:     J. Ronald Sim
                           Stoel Rives, LLP
11                         600 University Street
                           Suite 3600
12                         Seattle, WA  98101

13                         Jeremy D. Sacks
                           Stoel Rives, LLP
14                         900 S. W. Fifth Avenue
                           Suite 2600
15                         Portland, OR  97204

16   COURT REPORTER:       Nancy M. Walker, CSR, RMR, CRR
                           United States District Courthouse
17                         1000 S. W. Third Avenue, Room 301
                           Portland, OR  97204
18                         (503) 326-8186

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2            THE COURT:  Good morning.
 3            MR. ATKINSON:  Good morning, Your Honor, David
 4   Atkinson and Charles Gorder on behalf of the United
 5   States.  We're here in Criminal 05-413, United States
 6   versus Mehrdad Yasrebi and Child Foundation.
 7            Mr. Yasrebi is here, out of custody, with
 8   counsel, Dave Angeli.
 9            This is the date and time set for the filing of
10   an information and the defendant's entry of a plea of
11   guilty to that information.
12            THE COURT:  All right.  Thank you.
13            Let me ask a question before we turn to
14   Mr. Angeli.
15            I have a superseding indictment.  Now, was there
16   an arraignment on that indictment?
17            MR. ATKINSON:  No.
18            THE COURT:  This is the first appearance, then?
19            MR. ATKINSON:  Yes, sir.
20            THE COURT:  All right.  And what you have filed
21   is a superseding information, and that's what we'll
22   proceed on this morning.
23            MR. ATKINSON:  That's correct.
24            THE COURT:  All right.
25            MR. ATKINSON:  Judge King, as the case
```

4

1   progresses, we'll explain to you why we're doing it this

2   way, but that's correct.

3          THE COURT:  All right.

4          Mr. Angeli.

5          MR. ANGELI:  Good morning, Your Honor.  On the

6   issue that Your Honor just referred to, I understand that

7   at sentencing in this matter, the Government will be

8   moving to dismiss the previously filed indictment, which

9   is -- or at least we believe it is -- under seal.

10          We would ask -- and I don't believe there is any

11   objection from the Government -- that that indictment

12   remain under seal, at least until that time.

13          THE COURT:  Well, I've signed a document sealing

14   this, I believe.  There was an order to unseal regarding

15   a search warrant.  Is that where we are?

16          MR. ATKINSON:  No.  We're past that, Judge King.

17   Last year sometime I provided counsel with a search

18   warrant affidavit, pursuant to our negotiations in

19   connection with this case.

20          In attempting to file the information on Friday,

21   Judge King, the clerk's office would not accept it unless

22   we did something to unseal the case.  So I filed such a

23   motion on Friday.  I don't know where that is.

24   Ms. Austad tells me that you've signed that and it's

25   now --

1          THE CLERK:  It's just in the clerk's office.  It

2   just hasn't been filed, docketed yet.

3          MR. ATKINSON:  I take no position on whether the

4   indictments in this case that we filed essentially to

5   hold statutes of limitations are open or unsealed.  If

6   the defendant prefers them to remain sealed, I don't

7   really quarrel with that.

8          THE COURT:  Well, the problem is, I don't have

9   that order in front of me that I signed.  That's in the

10  clerk's office.  What does that order provide?

11         THE CLERK:  I don't have a copy of it, but it

12  unseals the case.

13         MR. ATKINSON:  It's an unlimited sealing order,

14  Judge.

15         THE COURT:  It's an unlimited sealing order; is

16  that correct?

17         THE CLERK:  Yes.

18         THE COURT:  And that's what you're asking for?

19         MR. ATKINSON:  Correct.

20         THE COURT:  It's a sealing order or an unsealing

21  order?

22         MR. ATKINSON:  Unsealing order.

23         THE COURT:  Okay.  That's what I need to

24  understand here.

25         And you want the entire case sealed; is that

1  correct?

2          MR. ANGELI:  Well, Your Honor, we certainly don't

3  object to the information that is before Your Honor this

4  morning to being unsealed.

5          THE COURT:  The Government, though, has filed an

6  order that unseals the entire file.  That's in the

7  clerk's office right now, and it's being processed.

8          MR. ANGELI:  And I guess our request, Your

9  Honor -- and I don't believe there is opposition to this,

10  and I believe the Child Foundation joins in the

11  request -- is that the existing indictment remain under

12  seal.

13          THE COURT:  The existing indictment, the one that

14  was previously filed.

15          MR. ANGELI:  Yes, Your Honor.

16          THE COURT:  And the information that we're going

17  to proceed on today, will that be under seal?

18          MR. ANGELI:  We don't see any reason for it to be

19  under seal.

20          THE COURT:  Okay.  You're going to have to

21  withdraw your order unsealing the file, then.

22          MR. ATKINSON:  Well, can we do this, then?

23  Can -- why doesn't Mr. Angeli file a motion clarifying

24  that the existing indictment remains under seal and the

25  remainder of the file is unsealed, and present it to Your

1    Honor.

2              THE COURT:  All right.  Be prepared to -- get

3    together, agree on the form of order.  Submit it to me.

4    If it's unopposed by the Government, I'll sign it.

5              MR. ANGELI:  We'll do that, Your Honor.  And in

6    the meantime, just so we don't get a hiccup in the next

7    12-hour period where the existing indictment is unsealed,

8    can you hold the Government's existing motion and order

9    in abeyance?

10             THE COURT:  Mary, can you stop the --

11             THE CLERK:  I can stop the process of that going

12   through right now.  I'll do that.

13             THE COURT:  Okay.  You submit an order.  If it's

14   not contested by the Government, I'll sign that order,

15   and that will be the order that controls either the

16   sealing or unsealing of any part of the file.  Is that

17   correct?

18             MR. ANGELI:  Yes, Your Honor.  We'll file that

19   this afternoon.  Thank you.

20             THE COURT:  All right.

21             MR. ANGELI:  With that said, Your Honor, we

22   acknowledge receipt of the one-count superseding

23   information in this case.  We waive the formal reading,

24   and Dr. Yasrebi is prepared to enter a guilty plea today.

25             THE COURT:  Well, we need to proceed with certain

1  formalities.  Let's swear your client, Mr. Yasrebi.

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Now, is the foundation going to also

4  appear at this time and enter a plea?

5          MR. SACKS:  Yes, Your Honor.

6          THE COURT:  And who represents the Child

7  Foundation?

8          MR. SACKS:  I'm Jeremy Sacks, with my colleague,

9  Ron Sim.  And we would ask Your Honor to -- we filed a

10  motion for pro hac vice for Mr. Sim that hasn't been

11  acted upon yet.

12          THE COURT:  Right.  Well, I'll enter the order

13  for pro hac vice representation.

14          Now, who has authority at this point to enter a

15  plea on behalf of Child Foundation?

16          MR. SIM:  I do, Your Honor.

17          THE COURT:  All right.  Is that through corporate

18  activity?

19          MR. SIM:  Yes, it is.  And it's been filed with

20  the courts, attached to our petition, Your Honor.

21          THE COURT:  All right.  Let's go ahead, then.

22  Why don't you swear Mr. Yasrebi and swear Mr. Sim.

23          We'll start with Mr. Yasrebi.

24          THE CLERK:  Would you please raise your right

25  hand.

1            (Defendant Mehrdad Yasrebi is then sworn.)

2            THE CLERK:  Thank you.

3            Would you please raise your right hand.

4            (Mr. Sim is then sworn.)

5            THE CLERK:  Thank you.

6            THE COURT:  You may be seated, Mr. Sim.

7            Mr. Yasrebi, I'm going to be asking you some

8    questions.  You must give me truthful answers to those

9    questions.  Do you understand that?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  All right.  Would you state again

12   your full name.

13           THE DEFENDANT:  Mehrdad Yasrebi.

14           THE COURT:  And your age?

15           THE DEFENDANT:  Fifty-three.

16           THE COURT:  And what is the extent of your formal

17   schooling and education?

18           THE DEFENDANT:  I have a Ph.D. in ceramic

19   engineering.

20           THE COURT:  Have you taken any medication

21   recently, anything that would cause you to have any

22   problem understanding what's happening here in court

23   today?

24           THE DEFENDANT:  No, Your Honor.

25           THE COURT:  Now, we're dealing with a superseding

1   information that's been filed naming you as a defendant

2   in the case.  Have you discussed the charges against you

3   with your lawyer?

4           THE DEFENDANT:  Yes, Your Honor, I have.

5           THE COURT:  And do you feel you understand the

6   nature and the seriousness of those charges?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  And you are appearing with your

9   attorney at this time, Mr. Angeli from the Angeli Law

10   Group; is that correct?

11           THE DEFENDANT:  That's correct, Your Honor.

12           THE COURT:  All right.  Now, I want to advise you

13   that you're not required to make any statement regarding

14   this matter.  If you have made a statement, you need not

15   say anything further.  If you start to make a statement,

16   you may stop at any time.  Any statement made by you may

17   be used against you.

18           Now, have you consulted with your lawyer on those

19   rights?

20           THE DEFENDANT:  Yes, Your Honor, I have.

21           THE COURT:  All right.  And, Counsel, do you

22   waive the reading of the superseding information?

23           MR. ANGELI:  We do, Your Honor.

24           THE COURT:  Okay.  Let me find it here.

25           Now, are you satisfied with the representation

1    and advice that has been given to you by your attorney in

2    this case?

3              THE DEFENDANT:  Yes, Your Honor, I am.

4              THE COURT:  Now, I have a petition to enter a

5    plea of guilty.  It's been handed to me this morning.  It

6    appears that you signed that document on December --

7    let's see -- December 15th of last year, 2010.  Is that

8    your signature on that?

9              Well, wait, that's the plea petition -- the plea

10   agreement.

11             THE DEFENDANT:  Right.

12             THE COURT:  The signature on the petition itself

13   is January 10th, 2011.  Is that your signature on the

14   petition?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Now, attached to that is a plea

17   agreement letter, and it appears that you signed that on

18   December 15th of last year.  Is that correct?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  All right.  Now, at this time I'm

21   going to ask the assistant United States attorney who is

22   handling this matter to summarize the terms of the plea

23   agreement.  I want to make sure you understand these

24   terms, so listen carefully to what he has to say.  You

25   may be seated while he does that.

1            MR. ATKINSON:   Thank you, Your Honor.

2            The terms of the plea agreement that are most

3    important are as follows:   The defendant has agreed to

4    waive his Fifth Amendment right to indictment and plead

5    guilty to an information that has been filed or will be

6    filed, charging him with conspiracy to defraud the United

7    States, in violation of Title 18 United States Code

8    Section 371.

9            The maximum penalty is five years' imprisonment,

10   a fine of $250,000 and three years' supervised release

11   and a $100 fee assessment.

12           There are currently existing indictments -- there

13   is currently an existing superseding indictment, which

14   the United States will move to dismiss at sentencing in

15   connection with this case, and we've agreed not to bring

16   further charges in this district against this defendant

17   based upon this investigation.

18           Assuming that the defendant accepts

19   responsibility -- and we have every reason to believe he

20   will -- the United States will recommend that he receive

21   credit for that in the guideline analysis.

22           We will be recommending that the Court impose a

23   sentence between 24 and 30 months' imprisonment.   We

24   reserve the right to ask for a fine.   The defendant may

25   request any sentence that he believes is warranted by the

1    evidence in the case.  We expect that there may be some

2    contested issues at sentencing, so we'd ask that

3    sentencing be set out a bit longer than the normal case,

4    so the parties can appropriately frame the issues for the

5    Court.

6              THE COURT:  How much additional time?

7              MR. ATKINSON:  At least three weeks.  We

8    contemplate that we'll file our sentencing memorandum

9    three weeks ahead of sentencing.

10             The defendant has conditionally waived his right

11   to appeal.  He's been advised in the plea agreement of

12   potential immigration consequences.  I'm advised that

13   Mr. Yasrebi is a lawful permanent resident at this point,

14   not a citizen of the United States.

15             The Court is not bound by this agreement.

16             Those are the salient features.

17             THE COURT:  All right.  I want to pursue the

18   waiver of indictment, so I'm going to ask him some

19   questions regarding that.

20             Would you stand, please, Mr. Yasrebi.

21             Mr. Yasrebi, I want to inform you that you have a

22   constitutional right to be charged by an indictment by a

23   grand jury, but you can waive that right and consent to

24   be charged by an information of the U.S. attorney.

25   Instead of an indictment, these felony charges against

1    you have been brought by the U.S. attorney by the filing

2    of an information.  And unless you waive indictment, you

3    may not charged with a felony unless a grand jury finds

4    by return of an indictment that there is probable cause

5    to believe that a crime has been committed and that you

6    committed it.

7            If you do not waive indictment, the Government

8    may present the case to the grand jury and ask it to

9    indict you.  A grand jury is composed of at least 16 and

10   not more than 23 persons.  And at least 12 grand jurors

11   must find there is probable cause to believe you

12   committed the crime with which you are charged before you

13   may be indicted.  A grand jury might or it might not

14   indict you.

15           Now, if you waive indictment by the grand jury,

16   the case will proceed against you on this U.S. attorney's

17   information just as though you had been indicted.

18           Have you discussed waiving your right to

19   indictment by the grand jury with your lawyer?

20           THE DEFENDANT:  Yes, I did, Your Honor.

21           THE COURT:  And do you understand your legal

22   right to indictment by a grand jury?

23           THE DEFENDANT:  Yes, I do, Your Honor.

24           THE COURT:  Has anyone made any threats to you or

25   promises to you in order to induce you to waive

1   indictment or are you doing this voluntarily?

2           THE DEFENDANT:  I do it voluntarily, Your Honor.

3           THE COURT:  Do you wish to waive your right to

4   indictment by a grand jury?

5           THE DEFENDANT:  Yes, I do, Your Honor.

6           THE COURT:  Now, has a waiver been signed,

7   Counsel?

8           MR. ANGELI:  Yes, it has, Your Honor.  We handed

9   it up to Ms. Austad.

10          THE COURT:  All right.  Let me find it among the

11  papers that are here.

12          Here it is.  I have a waiver of indictment.  It

13  appears that you signed that today, January 10th.  Is

14  that your signature on the waiver of indictment?

15          THE DEFENDANT:  Yes, it is.

16          THE COURT:  All right.  I find the waiver is

17  knowingly and voluntarily made.  It's accepted, and we'll

18  proceed to arraignment on the information.

19          You have waived the right to have that

20  superseding information read to you.

21          Is that correct, Counsel?

22          MR. ANGELI:  Yes, it is, Your Honor.

23          THE COURT:  Okay.  I'll sign this.

24          Now, you heard the summary that's been made by

25  the assistant United States attorney, Mr. Atkinson, of

1   the charges against you -- excuse me, of the terms of the

2   plea agreement.  Have you had an opportunity to go over

3   this plea agreement with your lawyer and discuss with him

4   how that plea agreement will affect you?

5              THE DEFENDANT:  Yes, I did, Your Honor.

6              THE COURT:  Are there any agreements or any

7   promises that have been made to you regarding your

8   sentence that are not contained in this plea agreement?

9              THE DEFENDANT:  No, Your Honor, there isn't.

10             THE COURT:  Has anyone threatened or intimidated

11  you in any way to get you to plead guilty when you really

12  didn't want to?

13             THE DEFENDANT:  No, Your Honor.

14             THE COURT:  All right.  Now, the offense to which

15  you are pleading guilty is a felony offense.  And after

16  sentencing, a judgment will be entered against you that

17  may deprive you of valuable civil rights.  It may cause

18  the denial of naturalization.  It may subject you to

19  deportation proceedings and removal from the United

20  States.

21             Do you understand that?

22             THE DEFENDANT:  Yes, I do, Your Honor.

23             THE COURT:  The maximum penalty that could be

24  imposed upon you for the crime to which you are pleading

25  guilty is five years in prison and a fine of up to

1    $250,000.  Has your attorney told you that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  That's the maximum penalty.

4              Now, you will have to pay a fee assessment of

5    $100.  Do you understand that?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Okay.  Now, it's my obligation to

8    determine a just and reasonable sentence for your case.

9    I won't be able to make that determination until after a

10   presentence report is prepared.  That's a report that's

11   prepared by the probation office.  It gives me

12   information about you and your background.  It gives me

13   information about the offense conduct that the Government

14   has alleged.

15             I will, based upon all that information, consider

16   any objections to the presentence report.  I will make

17   rulings on those objections.  I will determine an

18   advisory guideline range based upon all the facts

19   presented to me.

20             Now, in determining the appropriate sentence for

21   your case, I must consider the advisory sentencing

22   guideline range in addition to all other appropriate

23   factors.

24             Now, you and your lawyer may have discussed

25   possible sentences.  But do you understand that the

1    sentence the Court imposes may be different from any
2    estimate that your attorney may have given you?
3              THE DEFENDANT:  Yes, Your Honor.
4              THE COURT:  Do you understand that?
5              THE DEFENDANT:  Yes.
6              THE COURT:  All right.  Now, if you are sentenced
7    to prison, you're not entitled to parole.  You'll have to
8    serve the full sentence, except for any credit for good
9    behavior that you earn, and the maximum credit for good
10   behavior is 47 years for each year of imprisonment
11   served.  Do you understand that?
12             THE DEFENDANT:  Yes, I do, Your Honor.
13             THE COURT:  Now, if you are sentenced to prison,
14   there will be a term of supervised release to follow the
15   prison sentence, and that term will be up to three years.
16   During that time, if you were to violate any of the terms
17   of your supervised release, you could be sentenced to
18   additional prison time.  Do you understand that?
19             THE DEFENDANT:  I do, Your Honor.
20             THE COURT:  Are there any other charges pending,
21   Counsel, other than the charges in the indictment that
22   will be dismissed?
23             MR. ANGELI:  Not that we're aware of, Your Honor.
24             THE COURT:  All right.  Thank you.
25             Now, in the plea agreement, there is a provision

1   whereby you waive many of your rights to appeal and your

2   rights to post-conviction relief.  Have you discussed

3   that with your lawyer?

4           THE DEFENDANT:  Yes, I did, Your Honor.

5           THE COURT:  I just want you to understand that

6   ordinarily you may appeal your conviction if you believe

7   the guilty plea was unlawful or there is some fundamental

8   defect in the proceeding that has not been waived by your

9   entering a guilty plea.  You have a legal right to appeal

10  your sentence if you feel that sentence is contrary to

11  law, but you can give up these rights as part of a plea

12  agreement; and in your plea agreement, you have given up

13  a number of these rights.  Do you understand that?

14          THE DEFENDANT:  I do, Your Honor.

15          THE COURT:  Okay.  Now, there are recommendations

16  that are being made to me as part of the plea agreement,

17  and there are agreements that you have made with the

18  Government as part of that plea agreement.  I carefully

19  consider any recommendations that are made to me, but I'm

20  not bound by them.  And if I reject any recommendations

21  and agreements, or if your sentence turns out to be

22  different than you may have anticipated, you have no

23  right to withdraw your plea.

24          Do you understand that?

25          THE DEFENDANT:  I do, Your Honor.

1          THE COURT:  I want to advise you of the rights

2    you have if you decided to plead not guilty and go ahead

3    and try this case.

4          You have the right to be presumed innocent.  You

5    have a right to a trial by jury, and the Government would

6    have to prove every element of each charge against you

7    beyond a reasonable doubt.  You have the right to have a

8    lawyer assist you through the entire process, including

9    representation at trial.  You have the right to see and

10   hear witnesses and have them cross-examined in your

11   defense, and the right to have witnesses brought to court

12   to testify in your defense.

13         You cannot be forced to testify unless you

14   voluntarily choose to do so in your defense.  If you

15   decided not to testify or not to put on any other

16   evidence in your defense, these facts cannot be used

17   against you.

18         If you enter a guilty plea, there will be no

19   trial, and you will give up your trial rights I just

20   described.  Do you understand that?

21         THE DEFENDANT:  I do, Your Honor.

22         THE COURT:  Okay.  At this point I'm going to ask

23   Mr. Atkinson to outline the nature of the charge against

24   you, the essential elements of the charge, and the

25   evidence the Government could produce to support the

1    charge.  Please listen carefully, as I will ask you some

2    questions following that presentation about this charge.

3    You may be seated while Mr. Atkinson does that.

4         Mr. Atkinson?

5         MR. ATKINSON:  Thank you, Judge King.

6         The defendant is charge in the superseding

7    information with a single count of violation of the

8    defraud clause of the main conspiracy statute in Title

9    18.  This is commonly known as a Klein conspiracy.

10        The elements for the defendant are as follows:

11    that he entered into an agreement to obstruct or impede

12    the lawful functions of a federal agency -- in this case,

13    the indictment or the information has pled that the

14    agreement was to obstruct or impede the lawful functions

15    of the Internal Revenue Service and/or the Office of

16    Foreign Assets Control; both resident agencies lie within

17    the Treasury Department -- that he did so by deceitful or

18    dishonest means, and that he performed at least one overt

19    act in furtherance of the conspiracy.

20        If the case were to go to trial, the United

21    States could prove as follows:  First of all, that the

22    defendant was the founder and the chief executive officer

23    of a 501(c)(3) tax-exempt charity known as the Child

24    Foundation.  By 501(c)(3), I'm referring to the Internal

25    Revenue Code.  The Internal Revenue Service has oversight

1   and enforcement responsibility for 501(c)(3) charities or

2   tax-exempt charities, and it will consider revocation

3   when a charity engages in unlawful behavior or behavior

4   that is contrary to public interest.

5           The United States can prove that under

6   legislation enacted by Congress some time ago, known as

7   the International Emergency Economic Powers Act or

8   commonly referred to as IEEPA, I-E-E-P-A -- and in 1995

9   President Clinton ordered a sweeping embargo of Iran,

10  which embargo has been continued by every administration

11  following that of President Clinton.  The Treasury

12  Department, through the Office of Foreign Assets Control

13  or OFAC, issued regulations to implement this embargo.

14  OFAC has enforcement responsibility, also, for any

15  violation of the embargo.

16          By way of background as well, the defendant's

17  cousin is a man by the name of Ahmad Iranshahi, who

18  resides in Iran and runs a charity in Iran known as Refah

19  Kudak, which is the alter ego, as it were, of the Child

20  Foundation here in the United States, a charity over

21  which the defendant exercised control and for which he

22  was the chief executive officer.

23          Child Foundation sent substantial funds to Iran

24  in ways that violated the embargo, in the millions of

25  dollars, including in 2006 and in 2007.

1          The Government could prove that the defendant

2     agreed with his cousin Iranshahi in Iran and others to

3     attempt to conceal that fact.  He encouraged Iranshahi

4     and others not to provide information that would reveal

5     the sanctions violations or the embargo violations, and

6     he ultimately sought to prevent federal authorities,

7     including the Internal Revenue Service, which could have

8     revoked the charter, the 501(c)(3) charter of the Child

9     Foundation here, and the Office of Foreign Assets

10    Control, which has enforcement responsibility over the

11    embargo, as I mentioned earlier, from learning of the

12    violations.

13         The defendant, the Government could prove, placed

14    a specific telephone call and sent specific e-mails

15    encouraging others not to reveal or disclose these

16    violations of the embargo, alleged as overt acts,

17    sprinkled throughout the indictment in the overt acts

18    section.

19         So this is a sufficient factual basis.  This is

20    all the Government would need to prove and all we need to

21    focus on this morning.

22         The information alleges additional manner and

23    means of the conspiracy, in paragraphs 12 through 17 of

24    the information.  That will or perhaps may become

25    pertinent at sentencing, to the extent that the

1  Government will rely upon that evidence in order to

2  support its position at sentencing.

3          The defendant is free to contest certain aspects

4  of that, and he may well do that; and to the extent he

5  does, we'll queue those up for you to resolve at

6  sentencing, if we believe it's worth fighting over,

7  Judge.  But we may prove at sentencing that the defendant

8  participated in the execution and the coverup of a scheme

9  to send over three and a half million dollars through the

10 United Arab Emirates, disguised as embargo-exempt food

11 commodity transactions, when in reality at least part of

12 those transactions involved sending cash directly to

13 Iran, in violation of embargo.

14         Defendant acceded to the creation and provision

15 in the books and records of Child Foundation of

16 inaccurate documents that perpetuated the concealment of

17 the violation of the embargo in the ways that I just

18 mentioned, in order to disguise it and in order to

19 ultimately prevent the Internal Revenue Service and OFAC

20 from finding out about these embargo violations.

21         Another manner and means of the conspiracy

22 alleged in the indictment that's not necessary to address

23 this morning but that we may address at sentencing is

24 that the defendant also assisted in the facilitation of

25 the transfer of about $1.8 million in funds provided by a

significant donor, who is charged elsewhere, in a case
assigned to Judge Brown -- donors, I should say, plural,
in a case assigned to Judge Brown.  That money was also
forwarded to Iran, some of it for investment purposes and
other purposes, in violation of the embargo.

The defendant assisted in helping these donors
claim charitable tax deductions; and his conduct
assisted, to some extent, the impairment of the functions
of both the Office of Foreign Assets Control and the
Internal Revenue Service, in the sense that the
exaggerated tax deductions and the embargo violations
were -- were hidden, were concealed by his actions.

THE COURT:  All right.  Thank you, Mr. Atkinson.

Mr. Yasrebi, I'm going to call your attention to
paragraph 24 of your petition -- excuse me.  It's
paragraph 24, page 6 of your petition to enter a plea of
guilty.

Now, in this information, you are charged
generally with conspiracy to defraud the Treasury
Department of the United States.  I have to be satisfied
that you have committed acts which show that you are
guilty of that charge.

Now, looking at paragraph 24, I'm going to ask
you these questions from your petition which you have
submitted to the Court.

1              Did you -- from the middle of 2006 through early

2    2007, as president of the Child Foundation, were you

3    aware that Child Foundation funds were being used to

4    facilitate cash transfers to Iran?

5              THE DEFENDANT:  Yes, I was, Your Honor.

6              THE COURT:  All right.  And do you agree that

7    that was in violation of an embargo ordered by President

8    Clinton?

9              THE DEFENDANT:  Now, Your Honor.

10             THE COURT:  I'm sorry.  I couldn't hear you.

11             THE DEFENDANT:  I am now, Your Honor.

12             THE COURT:  Were you aware at the time that what

13   you were doing was improper?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  All right.  Now, is it true that you

16   did not disclose those transfers to the IRS, OFAC, or the

17   Child Foundation auditors?  Is that true?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  And is it true that you encouraged

20   several individuals to refrain from volunteering the

21   information suggesting that cash transfers had ever been

22   made?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  All right.  And do you freely

25   indicate that you are guilty of the charges of conspiracy

1    to defraud the Treasury Department of the United States?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  All right.  Anything further to cover

4    on that issue, Mr. Atkinson?

5              MR. ATKINSON:  No, thank you, Your Honor.

6              THE COURT:  What about venue?  Does that have to

7    have occurred in the District of Oregon?

8              MR. ATKINSON:  Yes, Your Honor.  The Government

9    could prove that many of the overt acts were performed

10   here in Oregon.

11             THE COURT:  Do you agree with that?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  All right.  Thank you.

14             Do you wish to discuss anything with your client

15   before I ask him how he pleads to the charge?

16             MR. ANGELI:  No, Your Honor.

17             THE COURT:  Is there anything you'd like to

18   discuss with your attorney before you enter a plea to

19   this charge?

20             THE DEFENDANT:  No, Your Honor.

21             THE COURT:  How do you plead to the charge in

22   Count 1 of the superseding information, guilty or not

23   guilty?

24             THE DEFENDANT:  Guilty, Your Honor.

25             THE COURT:  I find the defendant is fully

1    competent and capable of entering an informed plea and

2    that defendant's plea of guilty is a knowing and

3    voluntary plea and is accepted.

4            Sentencing will be for Monday -- it was set for

5    Monday, April 4th, 2011, at 11:00 a.m.  That's April 4th,

6    11:00 a.m.  How does that time work?

7            MR. ANGELI:  Your Honor, frankly, as Mr. Atkinson

8    referred to, this is going to be a little more

9    complicated than the typical sentencing proceeding, I

10   believe.  The bottom line is we'd like a little bit more

11   time.

12           THE COURT:  All right.  How much more time?

13           MR. ANGELI:  Perhaps another month, into May.

14           THE COURT:  You're looking at May.

15           How does the Government feel about that?

16           MR. ATKINSON:  The Government doesn't object to

17   that.  But the Court may want to set aside a half day.

18           THE COURT:  I didn't quite understand you.  You

19   say you're not objecting?

20           MR. ATKINSON:  I don't object.

21           THE COURT:  And you want us to set aside a half a

22   day?

23           MR. ATKINSON:  Yes, sir.

24           THE COURT:  All right.  We'll set it for half a

25   day.

1          What do we have in May?

2          THE CLERK:  We'll set it for May 9th, at 9:00.

3          MR. ANGELI:  That's fine for us, Your Honor.

4          THE COURT:  All right.

5          Now, there will be a presentence report prepared

6     to assist me with sentencing, and you'll be asked to give

7     information for that report.  You can discuss with your

8     lawyer whether you wish to be interviewed by probation or

9     not.  You'll have a chance to read the presentence

10    report.  You'll have a chance to speak at the sentencing

11    hearing.

12         Now, I understand that you are on release at this

13    time.  The recommendation of pretrial services is that

14    you be continued.

15         Excuse me.  He's not on release at this point, is

16    he?

17         MR. ATKINSON:  No, Judge King.  This is his

18    initial appearance in this case.

19         THE COURT:  Yes, he wouldn't be.

20         MR. ATKINSON:  I've had an opportunity to speak

21    to Ms. Kolbe.  Mr. Angeli has had that opportunity.

22    We're not seeking his detention.  We have no problem with

23    his release on the conditions that Ms. Kolbe mentioned.

24         THE COURT:  All right.  He will be released with

25    the following conditions:  He's to report as directed by

1   pretrial services.  He is not to change his place of

2   residence without the approval of pretrial services.  His

3   travel is limited to the state of Oregon, unless prior

4   approval is obtained from U.S. pretrial services.  He's

5   to surrender any passport to the clerk of the court or

6   submit a statement to pretrial services that he no longer

7   possesses a passport.  He's not to obtain a new passport.

8          I believe I signed an order for release earlier.

9          Ms. Kolbe, do you have that?

10          PRETRIAL SERVICES OFFICER:  I do, Your Honor.

11          THE COURT:  All right.

12          MR. ANGELI:  Your Honor, if I may, we don't

13   object to any of those conditions, with one exception,

14   which I discussed with Mr. Atkinson -- and I don't

15   believe he has any objection -- and that is that the

16   restriction on out-of-state travel be expanded to

17   Washington as well.

18          THE COURT:  The state of Washington, any problem

19   with that?

20          MR. ATKINSON:  No, sir.

21          THE COURT:  All right.  Then that condition will

22   be placed in the conditions.

23          All right.  I believe that takes care of

24   everything for Mr. Yasrebi.  Is that correct?  Anything

25   else, Counsel?

1           MR. ATKINSON:  No, sir.  Thank you.

2           THE COURT:  All right.  Then let's proceed with

3  the corporation's.

4           Mr. Sim, you have submitted a waiver of

5  indictment.

6           MR. SIM:  Yes, I have, Your Honor.

7           THE COURT:  You have also submitted a petition to

8  enter a plea of guilty on behalf of the corporation.

9           MR. SIM:  That's correct.

10          THE COURT:  Let me just sign a couple of things.

11          (Pause) All right.  Mr. Sim, you've been sworn?

12          MR. SIM:  Yes, I have, Your Honor.

13          THE COURT:  Mr. Sim, do you represent Child

14  Foundation?

15          MR. SIM:  I do.

16          THE COURT:  Are you an attorney?

17          MR. SIM:  Yes, I am.

18          THE COURT:  Mr. Sim, have you read the

19  superseding information that's been filed naming the

20  Child Foundation as a defendant in this case?

21          MR. SIM:  Yes, Your Honor, I have read it.  I

22  have also shared it with the board of directors of the

23  Child Foundation.

24          THE COURT:  Would you state just briefly your

25  understanding of the charge against Child Foundation.

1          MR. SIM:  Your Honor, it's the same information

2    that was summarized by the Government with regard to

3    Dr. Yasrebi, charging a Klein conspiracy, conspiracy to

4    defraud the Treasury Department of the United States.

5          THE COURT:  All right.  Now, you represent Child

6    generally; is that correct?

7          MR. SIM:  Child Foundation, I've represented them

8    for two and a half years.

9          THE COURT:  And you can represent to me that

10   there is a corporate resolution which authorizes the

11   entry of a guilty plea?

12         MR. SIM:  Yes, Your Honor.

13         THE COURT:  And your counsel in this case is

14   Mr. -- let me find your name here -- Mr. Sacks?

15         MR. SIM:  Well, we're partners in the same law

16   firm.  We're both from Stoel Rives.

17         THE COURT:  In any event, you have counsel if you

18   need it.

19         MR. SIM:  Yes.

20         THE COURT:  All right.  You understand your

21   rights, that you need not make a statement?

22         MR. SIM:  Yes, Your Honor.

23         THE COURT:  Any need for me to explain that to

24   you?

25         MR. SIM:  No.

1            THE COURT:   All right.   Now, with regard to the

2    indictment, do you understand that you do have -- the

3    corporation has a constitutional right to be charged by

4    an indictment of a grand jury?

5            MR. SIM:   Yes, Your Honor.   That's actually a

6    disputed issue under the law, but --

7            THE COURT:   Well, let's assume that --

8            MR. SIM:   Assuming it does, we've waived it.

9            THE COURT:   Assuming they do, you heard my

10   statements made to Mr. Yasrebi.   Did you understand all

11   of those statements?

12           MR. SIM:   We did, and our client has as well.

13           THE COURT:   All right.   Now, you're authorized,

14   then, to act for the corporation in this matter?

15           MR. SIM:   Yes, Your Honor, I am.

16           THE COURT:   All right.   Have you fully discussed

17   the charges with your client?

18           MR. SIM:   Yes, I have.

19           THE COURT:   And is it your feeling that your

20   client does understand the charges being made against the

21   corporation?

22           MR. SIM:   I am 100 percent confident of that,

23   Your Honor.

24           THE COURT:   Has anyone made any promises to the

25   corporation?   Are there any agreements with the

1  corporation regarding the sentence in this case, other

2  than what's set forth in the plea agreement and the -- in

3  the plea agreement?

4          MR. SIM:  Nothing other than what's in the plea

5  agreement, Your Honor.

6          THE COURT:  Okay.  Counsel, what is the penalty

7  that can be imposed on the corporation?

8          MR. ATKINSON:  The maximum penalty is set forth

9  in paragraph 3 of the plea agreement, Judge King, a

10  criminal fine of $500,000 and a term of probation of up

11  to five years.  An assessment of $400 is mandatory.

12          THE COURT:  All right.  Have you discussed those

13  penalties with your client?  Do they understand them?

14          MR. SIM:  Yes, they do, Your Honor.

15          THE COURT:  And they understand that this is a

16  felony offense?

17          MR. SIM:  They do.

18          THE COURT:  Okay.  There's a fee assessment of

19  $100.  I assume the corporation will have to pay that as

20  well.

21          MR. SIM:  I'm afraid it's a $400 assessment for a

22  corporation, Your Honor.

23          THE COURT:  Is it 400?

24          MR. SIM:  And I've got the check right here.

25          THE COURT:  All right.  Good.  Well, that's

1    interesting.

2              All right.  And as you heard me explain to

3    Mr. Yasrebi, it's my obligation to determine a just and

4    reasonable sentence for the case.  I won't be able to do

5    that until after a presentence report is prepared.  And I

6    will take into consideration the advisory sentencing

7    guideline range, if they apply.

8              Do they apply to corporations as well?

9              MR. ATKINSON:  Yes, sir, they do.

10             THE COURT:  All right.  If they apply in this

11   case, I'll take that into consideration.  I'll take all

12   of the other sentencing factors into consideration at the

13   time.

14             Any other pending charges against the corporation

15   in connection with this matter?

16             MR. SIM:  None that we're aware of, Your Honor.

17             THE COURT:  And let's see if your plea agreement

18   includes a waiver of appeal.

19             MR. SIM:  It does.

20             THE COURT:  Is it the same waiver?

21             MR. SIM:  Yes, it is, Your Honor.

22             THE COURT:  And have you discussed the fact that

23   the corporation has waived most of its rights to appeal

24   or claims for post-conviction relief?

25             MR. SIM:  I have done that.  And, Your Honor, the

```
 1   entire board of directors has reviewed the plea petition
 2   and understands what's in it.
 3            THE COURT:  Okay.  You heard me explain the
 4   rights that an accused has in court with regard to a
 5   trial and all those other factors.
 6            MR. SIM:  Yes.
 7            THE COURT:  You heard me explain that to
 8   Mr. Yasrebi.  Are you familiar with that?
 9            MR. SIM:  Yes, I am.
10            THE COURT:  And is your client aware of these?
11            MR. SIM:  Yes.  My client is fully advised on
12   that.
13            THE COURT:  Now, with regard to the corporation's
14   knowledge --
15            MR. SIM:  Paragraph 17 of our plea petition would
16   be --
17            THE COURT:  Okay.  That's what I'm looking for,
18   paragraph 17.
19            I'm going to ask Mr. Atkinson to summarize the
20   basis for the charges against the foundation.
21            You summarized the facts surrounding the
22   activities.  Would you summarize for us the facts that
23   make the corporation liable for these charges as well.
24            MR. ATKINSON:  Yes, Your Honor.  Thank you.
25            The corporation is charged in the same
```

information, a single-count conspiracy under 18 United States Code Section 371, brought not under the offense clause, but under the defraud clause, as it's commonly known, a Klein conspiracy.

The elements for a corporation are the same as those that would apply to Dr. Yasrebi individually.  As I indicated, however, Dr. Yasrebi was the chief executive officer.  He's since resigned, but he was the chief executive officer of the Child Foundation at all times that was material under the information.  Thus, his actions are imputable to the corporation.

The Government would need to have proven that the corporation engaged in the offense through the acts of its agent or employee; and Dr. Yasrebi certainly fits within that category, for the reasons that I've already mentioned.

The factual basis is identical to that that I've already recited; and for the benefit of the record, rather than going through that again, I'd simply ask that we incorporate the factual basis that I summarized earlier and the sentencing factors upon which the United States may rely at sentencing here, rather than repeat them.

THE COURT:  All right.  Thank you, Mr. Atkinson.

You were here, Mr. Sim, while Mr. Atkinson set

1    forth the elements that would have to be proved and the

2    evidence the Government could produce to support the

3    charges against Mr. Yasrebi.  I'm going to call your

4    attention to paragraph 17 of your petition to enter a

5    plea of guilty on behalf of the corporate defendant, and

6    I'll ask you if, based upon your knowledge, the corporate

7    defendant is guilty of the following factors.

8         Is Child Foundation a corporation organized under

9    the laws of Oregon?

10         MR. SIM:  Yes, Your Honor.

11         THE COURT:  And was Mr. Yasrebi president of the

12    Child Foundation in 2006 and 2007?

13         MR. SIM:  Yes, he was, Your Honor.

14         THE COURT:  And do you agree on behalf of the

15    corporation that the criminal acts to which Mr. Yasrebi

16    has admitted in his plea petition and here in court were

17    done on behalf of Child Foundation, with the intent to

18    benefit the Child Foundation, and for which Child

19    Foundation is vicariously liable?

20         MR. SIM:  Yes, Your Honor, Child Foundation

21    admits that.

22         THE COURT:  All right.  These facts include,

23    number one, from the middle of 2006 through early 2007,

24    Child Foundation funds were being used to facilitate cash

25    transfers to Iran, in violation of the embargo.

1  Mr. Yasrebi had the power to stop these transfers and he

2  failed to do so.

3          Is that an act which you -- are you aware of that

4  act?

5          MR. SIM:  Yes, and Child Foundation admits that.

6          THE COURT:  Number two, Dr. Yasrebi did not

7  disclose those transfers to the IRS, OFAC, or Child

8  Foundation's auditors, and he encouraged others to

9  refrain from volunteering information suggesting that

10 cash transfers had ever been made.  Are you admitting

11 those facts?

12         MR. SIM:  Yes.  Child Foundation admits those

13 facts, Your Honor.

14         THE COURT:  Do you wish to consider anything or

15 talk to your associate before I ask you how the

16 corporation pleads to the charge?

17         MR. SIM:  No, Your Honor.  We're prepared.

18         THE COURT:  How does the corporation plead to the

19 charge, guilty or not guilty?

20         MR. SIM:  Child Foundation enters a guilty plea.

21         THE COURT:  I find that Child Foundation is fully

22 competent and capable of entering an informed plea

23 through its representative, an attorney, and that

24 defendant's plea of guilty is a knowing and voluntary

25 plea and is accepted.

1          Sentencing will occur on the same date and time

2     as that set for Mr. Yasrebi.

3          Is there any other issue we need to discuss at

4     this time?  Mr. Atkinson?

5          MR. ATKINSON:  Not for the United States, Judge

6     King.  Thank you.

7          THE COURT:  Mr. Sim?

8          MR. SIM:  I think we're ready.

9          THE COURT:  All right.  Thank you.

10         As I say, I find they're competent and capable of

11    entering an informed plea.  It's a knowing and voluntary

12    plea, and it is accepted.

13         I think that's it.  Anything else?

14         MR. SIM:  Thank you, Your Honor.

15         THE COURT:  Thank you.

16         MR. ANGELI:  Thank you, Judge.

17         THE CLERK:  Court is in recess.

18

19

20         (Proceedings concluded.)

21

22

23

24

25

1                          --oOo--

2

3              I certify, by signing below, that the

4        foregoing is a correct transcript of the record

5        of proceedings in the above-titled cause.  A

6        transcript without an original signature,

7        conformed signature or digitally signed signature

8        is not certified.

9

10

11

        /s/ Nancy M. Walker                  1-18-12
12      _____     _____
        NANCY M. WALKER, CSR, RMR, CRR       DATE
13      Official Court Reporter
        Oregon CSR No. 90-0091
14

15

16

17

18

19

20

21

22

23

24

25