**CHILD FOUNDATION**

May 30, 2007

Mr. Adam Szubin
Director, Office of Foreign Assets Control
1500 Pennsylvania Avenue, N.W.
Treasury Annex – Second Floor
Washington, D.C.  20220
**Attn: Licensing Division**

> Re:    Request for Authorization for U.S. Persons to Engage in Transactions
> Relating to Adoption of Children from Iran

Dear Mr. Szubin:

Child Foundation, Inc., an Oregon-based not-for-profit organization, requests authorization for Child Foundation and other U.S. persons to engage in transactions relating to the completion of adoption procedures for children from Iran (hereafter referred to as the "Adoption Program").  While U.S. person participation in some aspects of the proposed Adoption Program would not require an OFAC license due to the exclusion of such activities from the scope of the Iranian Transactions Regulations, 31 C.F.R. § 560 ("ITR") and the availability of general licenses, participation of U.S. persons in other aspects of the Adoption Program appear to require a license.  We seek an authorization that would allow Child Foundation, Heritage Adoption Services, as well as U.S. prospective adoptive parents to engage in all necessary transactions ordinarily incident to the Adoption Program, as set forth below.

Our special outside legal counsel for OFAC matters has spoken with OFAC licensing staff regarding this application, and they have advised this may be a novel licensing request.  We have proposed issuance of a single license to cover all participants in the Adoption Program, but recognize that modifications might be necessary.  Our goal is to minimize the number of repetitive license applications that would be required and to minimize additional delays in what is already a long and bureaucratic process of international adoption.  While it is difficult to predict, since the Adoption Program is in the planning stages, we anticipate significant interest in the Iranian-American community, with the possibility of dozens, or possibly even hundreds, of prospective adoptive parents participating in the Adoption Program over the next few years.

110

CF292454

Exhibit 1
Page 1 of 7



# CHILD FOUNDATION

Mr. Adam Szubin
Office of Foreign Assets Control
May 30, 2007
Page 2 of 7

We are willing to discuss other potential structures with OFAC in order to balance feasibility for the organizations and individuals involved with OFAC's foreign policy and administrative concerns. In light of the humanitarian nature of the program, we look forward to working with OFAC to fashion an efficient, effective licensing solution that will allow U.S. persons to pursue international adoptions of Iranian children.

## 1.    Roles of Parties Involved:

**Child Foundation, Inc. ("CF")** is an Oregon-based not-for-profit organization that was formed in 1994 with the primary goal of assisting needy children and encouraging them to stay in school. Please refer to our website, www.childfoundation.org. As part of its charitable work, CF undertakes various programs to support children in the United States and overseas. CF works in cooperation with local charities to assess and provide support to needy children. Over the years, CF has provided support for children in Afghanistan, Bosnia-Herzegovina, India, Indonesia, and Iran  CF received OFAC license IA-5843 (3/18/04) authorizing the provision of relief items for the victims of the 2003 earthquake in Bam, Iran. CF's primary role in the adoption program would be to refer prospective adoptive parents to a U.S. adoption agency and to resources in Iran to assist in completing the adoption process.

**Heritage Adoption Services, Inc. ("Heritage")** is an Oregon based adoption agency that was founded in 1991. For more information about Heritage, see www.heritageadoption.org. One of its specialties is processing international adoptions. Heritage's primary role would be assisting prospective adoptive parents with completing adoption requirements in the United States. (Note: As discussed further below, CF anticipates the possible involvement of additional adoption agencies in the Adoption Program)

**Rafeh Koudek ("RK")** is an Iranian non-governmental organization that provides services to needy children in Iran. RK is CF's primary organizational contact for the provision of humanitarian relief to children in Iran. RK would assist Adoptive Parents in completing the necessary procedures to adopt a child in Iran. This could include referring them to Iranian service providers, such as attorneys and translators, to assist in completing the required legal and government requirements in Iran.

**Prospective adoptive parents who are U.S. citizens, permanent residents, or are otherwise considered "United States persons" as defined by 31 C.F.R. § 560.314 ("Adoptive Parents")** living in the United States would be brought into the process through contact with either CF or Heritage. CF and Heritage would provide them with assistance and services in completing the processes required in the United States and Iran

CF292455
Exhibit 1
Page 2 of 7



# CHILD FOUNDATION

to complete the adoption, including referring them to RK for assistance with adoption procedures in Iran.

## 2.    Summary of Adoption Program:

Adoption in Iran is limited to children who have been adjudicated as orphans without guardians. Such children are under the supervision of the Iran Welfare Organization, an Iranian government institution. About 70% of these children are eligible for adoption. The process of establishing the child's eligibility for adoption and also the prospective parents' eligibility to adopt requires the completion of a number of procedures involving the Iran Welfare Organization, the Iranian courts, and other Iranian government agencies. It is usually a two-stage process, first resulting in temporary guardianship of the child, followed by establishing permanent guardianship. (Islamic law does not recognize the termination of prior family relationships or the establishment of new family relationships as in Western adoption, so the process is not considered "adoption", but rather the establishment of permanent guardianship over the minor child. Once in the United States, the child would be legally adopted. We will refer to the entire process using the term "adoption", since the ultimate goal is adoption of the child within the U.S. legal system.)

The process requires the Adoptive Parents to be present in Iran for certain interviews and other proceedings before Iranian Government authorities, and for one or both prospective parent to remain in Iran during the temporary custody period. In some cases, the process can take up to two years to complete. CF and RK believe that the processing time can be reduced significantly for Adoptive Parents if Iranian organizations and service providers can cooperate with U.S. adoption agencies to expedite the process.

Adoptive Parents must also complete required adoption procedures in the United States, such as submitting to a background check and completing other eligibility requirements in their state of residence. Most, if not all, of these services would be provided by Heritage. Further, it is necessary to arrange for appropriate U.S. Government immigration authorizations for the child. It is anticipated that Heritage, CF, and RK could participate in various aspects of these consular and immigration processes. We have provided a copy of guidance published by the U.S. Embassy Consular Section in the United Arab Emirates regarding U.S. consular and visa requirements for Iranian adoptions.

Prospective Adoptive Parents would contact either CF or Heritage regarding their interest in adopting an Iranian child. CF and Heritage propose to publicize the Adoption Program through their websites, publications, mailings, and at fundraising or other events, and to work cooperatively to assist prospective parents with processing. CF

112

11364 SE Highland Lp, Clackamas • Mailing: P.O. BOX 1364, Clackamas, OR 97015 • (503) 698-4084 • Fax: (503) 698-1573 • www.childfoundation.org

CF292456

Exhibit 1
Page 3 of 7

 **CHILD FOUNDATION**

Mr. Adam Szubin
Office of Foreign Assets Control
May 30, 2007
Page 4 of 7

would refer Adoptive Parents to Heritage for assistance with U.S. adoption processing. It is anticipated that the Adoptive Parents would enter into an agreement with Heritage for services relating to the adoption. Heritage's services are generally limited to those provided to the prospective adoptive parents in the United States. Heritage would charge the Adoptive Parents its customary fees for such services. It is not anticipated that the Adoptive Parents would enter into an individual agreement with CF to provide services related to the adoption. Rather, CF and Heritage would enter into an agreement, wherein CF would provide assistance to Heritage clients by referring them to RK and service providers in Iran and assisting with related communications, for which CF would be reimbursed for its expenses and related overhead.

RK would coordinate assistance to Adoptive Parents with adoption procedures in Iran. CF and Heritage do not anticipate participating directly in the legal or administrative processes in Iran, but may be required to provide indirect assistance related to the preparation of documents by the Adoptive Parents.

The adoption process in Iran involves numerous steps. They can be summarized as follows:

1- Acquiring necessary forms from government offices.
2- Document translation.
3- Acquiring approvals from the Iranian Justice and Foreign Affairs ministries.
4- Acquiring required documents from the U.S. Interests Section in Iran.
5- Obtaining medical tests and identity confirmation tests for parents and children.
6- Arranging for interviews for prospective adoptive parents with Government authorities.
7- Coordinating changes to child's documents, such as passport/ID card.
8- Local transportation services.
9- Ticket reservation and time coordination if requested by Adoptive Parents.
10- Assuming temporary custody (care and shelter for child while Adoptive Parents not present in Iran).

Some of these activities, such as the provision of informational materials, personal communications, and activities relating to procuring travel to and from Iran, would be exempt from the prohibitions under ITR § 560.210. Nonetheless, we are seeking explicit authorization from OFAC for such activities in order to confirm these exemptions, and to be able to assure Adoptive Parents that all activities related to the Adoption Program have been approved by OFAC.

The Adoption Program could involve imports of services and trade transactions related to Iranian origin services presumptively prohibited by ITR §§ 560.201 and/or

*113*

11364 SE Highland Lp, Clackamas • Mailing: P.O. BOX 1364, Clackamas, OR 97015 • (503) 698-4084 • Fax: (503) 698-1573 • www.childfoundation.org

CF292457
Exhibit 1
Page 4 of 7

 **CHILD FOUNDATION**

Mr. Adam Szubin
Office of Foreign Assets Control
May 30, 2007
Page 5 of 7

560.206. It is anticipated that RK will provide assistance to the Adoptive Parents with respect to the completion of the required procedures in Iran. It is also anticipated that assistance of Iranian attorneys, notaries, and translators may be required. The Adoptive Parents would be responsible for paying any fees to RK, Iranian service providers, and to the Iranian government (such as court costs and document fees). An average adoption process would require the payment of approximately $2,200 in fees and costs on the Iranian side, although the amount may vary from case to case.

To the extent such services are received and paid for by the Adoptive Parents while they are in Iran, they would appear to be authorized under the general license in ITR § 560.518(c)(3). Nonetheless, we are requesting that the license expressly authorize receipt of and payment for such services while the Adoptive Parents are both inside and outside Iran, including payments made on behalf of the prospective parents by CF or Heritage.

The Adoption Program could also involve exports of U.S.-origin services to Iran presumptively prohibited by ITR § 560.204. CF and Heritage might need to provide assistance to the prospective Adoptive Parents while they are in Iran during the adoption proceedings, and/or provide assistance to RK or other Iranian service providers to help complete the adoption process.

3.    **Authorization Requested:**

CF requests authorization for Child Foundation, Inc. Heritage, and U.S. person Adoptive Parents to engage in all financial transactions, importations of Iranian-origin services, and exports of U.S.-origin services directly related and ordinarily incident to the completion of guardianship and/or adoption procedures required by the Iranian authorities and by U.S. state and federal authorities ("Adoption Program"). Such authorization shall permit, without limitation, payment of required fees and costs to agencies of the Government of Iran, the Government of the United States and any state or territory therein, and to persons in Iran engaged in the provision of goods and services ordinarily incident to the Adoption Program. Such authorization shall also permit exports of services by Child Foundation, Inc., Heritage Adoption Services, Inc., and the Adoptive Parents to persons located in Iran related to implementation of the Adoption Program.

U.S. person adoption agencies other than Heritage may rely on this authorization, provided that notice of their participation in the Adoption Program has been made to OFAC, which notice shall include a certification that they have received a copy of the license, including all terms and conditions. Adoptive Parents may rely upon the license, provided that they have entered into an agreement with Heritage (or another adoption agency whose participation in the Adoption Program has been duly notified to OFAC) for

114

11364 SE Highland Lp, Clackamas • Mailing: P.O. BOX 1364, Clackamas, OR 97015 • (503) 698-4084 • Fax: (503) 698-1573 • www.childfoundation.org

CF292458
Exhibit 1
Page 5 of 7



# CHILD FOUNDATION

Mr. Adam Szubin
Office of Foreign Assets Control
May 30, 2007
Page 6 of 7

the provision of services related to the adoption of a child from Iran, and they have been provided with a copy of the license, including all terms and conditions.

## 4.  Factors Favoring Approval:

We believe the humanitarian aspects of this program are self-evident. Approval of this program would support contacts between the two countries in an area that reflect the American spirit of generosity and caring for children in need. The primary beneficiaries in Iran would be orphan children, and the transfer of services and funds to Iran in connection with the Adoption Program would be minimal. Needless to say, many prospective parents in the United States would benefit tremendously from the opportunity to adopt an Iranian orphan.

We do not believe approval would be controversial, and it would be consistent with the establishment of humanitarian donation exemptions in ITR § 560.210, the Trade Sanctions and Reform Act ("TSRA") programs that authorize OFAC to issue licenses for sales of agricultural and medical commodities to Iran, and the issuance of general licenses to support humanitarian relief following the 2003 earthquake in Bam, Iran. These exemptions and licenses reflect U.S. support for needy people in Iran; this application is intended to benefit one of most needy and vulnerable populations in Iran.

## 5.  Special Request Regarding License Validity Period:

As mentioned above, adoption of a child from Iran can take a long time, up to two to three years. We hope that the issuance of an OFAC license will enable the parties to cut down that time significantly, but there are no guarantees. Accordingly, we respectfully request that OFAC issue its authorization for a period of four years, to minimize the need to submit renewal requests and minimize the likelihood that ongoing adoption procedures could be put on hold due to the processing of license renewals.

## 6.  Confidentiality and Contacts:

This letter and the accompanying materials contain confidential and proprietary information of Child Foundation and others, the disclosure of which would be harmful to its interests. Child Foundation respectfully invokes the protections afforded it by the Trade Secrets Act and 5 U.S.C. § 552(b)(4) when submitting this letter and attached materials. If a decision is made by OFAC or any other entity to release this information despite our request for confidentiality, Child Foundation requests an opportunity to be heard on the question of release.

Should you have any questions regarding this application, please contact me at 503-698-4084 or our special outside counsel for OFAC matters, Wayne Rusch, Dan

115

11364 SE Highland Lp, Clackamas • Mailing: P.O. BOX 1364, Clackamas, OR 97015 • (503) 698-4084 • Fax: (503) 698-1573 • www.childfoundation.org

CF292459
Exhibit 1
Page 6 of 7

 **CHILD FOUNDATION**

Mr. Adam Szubin
Office of Foreign Assets Control
May 30, 2007
Page 7 of 7

Fisher-Owens or their colleagues at Berliner, Corcoran & Rowe LLP at 202-293-5555.
We look forward to your usual prompt response to this application.

Respectfully submitted,

Mehrdad Yasrebi
President
Child Foundation, Inc.

11364 SE Highland Lp, Clackamas • Mailing: P.O. BOX 1364, Clackamas, OR 97015 • (503) 698-4084 • Fax: (503) 698-1573 • www.childfoundation.org