# Internal Revenue Service
# Criminal Investigation

# Memorandum of Interview



**In Re:**    Mehrdad Yasrebi & Child Foundation    **Location:**    1500 S.W. First, Suite 400
Portland, OR  97201

**Investigation #:**    930530171 & 930530224 &
1000220357

**Date:**    October 14, 2009
**Time:**    8:30 AM
**Participant(s):**    Jackie Wheatley, Interviewee
Debra J. Meyer, IRS Special Agent
Cindy Arndt, Revenue Agent

On this date IRS Special Agent Debra Meyer and Revenue Agent Cindy Arndt interviewed Jackie Wheatley, CPA, as previously arranged. Pursuant to questioning Wheatley answered substantially as follows:

1. Wheatley's full name is Jacolyn C. Wheatley.  Wheatley's date of birth is July 30, 1953.  Wheatley's address is PO Box 82071 Portland, Oregon  97282, telephone number (503) 803-3697.
2. Wheatley has been a Certified Public Accountant (CPA) since 1998.  After Wheatley obtained her CPA certification she worked in private practice for a few different corporations.  In 2002 Wheatley started her own private practice, Accounting4NonProfit (A4NP), which specializes in working with non profit entities including preparing Form 990's, Return of Exempt Organization Exempt From Income Tax, setting up accounting systems for non profit entities, occasionally assisting with preparing Form 1023's and conducting a few audits.  Wheatley does not prepare Individual or Corporate income tax returns, only Form 990 returns.
3. Wheatley works with approximately twenty-five non profit entities.  Wheatley's business increases each year.  With revenue of approximately $1.5 million a year Child Foundation is one of Wheatley's largest clients.  A4NP's business protocol includes: Wheatley interviews the client, provides an engagement letter, and makes an agreement with the client about what the client will provide (client does most of the work), refers bookkeeping services if necessary, and provides a list of monthly financial details.
4. Wheatley's initial interview regarding Child Foundation was with Mehrdad Yasrebi, president of Child Foundation.  Wheatley and Yasrebi interviewed each other and Wheatley provided references.  Wheatley provided Yasrebi with an engagement letter which he signed as president of Child Foundation.

CF287859

Exhibit 3
Page 1 of 6

5. Wheatley did not have any reservations or concerns regarding accepting Child Foundation as a new client. Child Foundation is currently Wheatley's client.

6. Wheatley and Yasrebi agreed that Wheatley would simplify Child Foundation's accounting system. Wheatley believes that Yasrebi has a general knowledge of accounting.

7. Wheatley performed the work in the preparation of the Child Foundation Form 990 returns for 2007/05, 2008/05 and 2009/05 and the attached statements.

8. Child Foundation uses Peachtree accounting software to keep track of its finances.

9. When Wheatley needed information regarding Child Foundation she contacted Yasrebi, David Kirkwood, former Child Foundation office manager, or employees Carolynee Haycraft or Sepideh Hajarizadeh. When David Kirkwood resigned Child Foundation/Yasrebi chose to use an outside contractor to do Child Foundation's day to day bookkeeping. Wheatley recommended Cari Zoebelle and Yasrebi hired her to do Child Foundation's bookkeeping. Child Foundation has a fairly small office staff, approximately five or six people, and no one qualified to do the bookkeeping.

10. Child Foundation also engaged an outside auditor, Cheryl Morgan of Kern & Thompson, LLC, 1618 1st Avenue, Portland, Oregon 97201 to prepare audited financial statements for Child Foundation for the 2007/05 year. Since Wheatley prepared the Child Foundation Form 990 for 2007/05, according to AICPA rules, Wheatley could not audit Child Foundation.

11. Cheryl Morgan prepared the audited Child Foundation financial statements for the 2007/05 year. Morgan was aware that a search warrant had been executed at the Child Foundation office by federal agents during July of 2008. Morgan decided not to conduct the audit for Child Foundation for the following year because of the risk involved regarding Child Foundation being investigated. Wheatley explained that as an auditor when you accept a new client, your CPA certification is on the line/at risk if you do not conduct the proper due diligence.

12. After Morgan resigned as Child Foundation's auditor, Dr. Hossein Salehi, Child Foundation employee, found a new auditor, Susan Haase, Peninsula Accounting Service, San Francisco, California. Haase is experienced in auditing other similar non profit organizations that provide humanitarian aid around the world. Haase also consulted with Child Foundation's attorneys prior to accepting Child Foundation as a client.

13. Wheatley prepared internal monthly financial statements/reports for Child Foundation. Wheatley did not prepare audited financial statements. However, Wheatley writes the footnotes to the Child Foundation financial statements.

14. Wheatley prepared Child Foundation's 2007/05, 2008/05 and 2009/05 Form 990, Return of Organization Exempt From Income Tax. In July 2008 when Wheatley received a grand jury subpoena from the government, the Child Foundation Form 2008/05 was not completed so she did not provide a copy. Wheatley just finished the Child Foundation 2009/05 Form 990 last night (10/13/2009). Wheatley also prepared monthly financial statements for Child Foundation.

15. The information for the Child Foundation Form 990's for 2007/05 through 2009/05 prepared by Wheatley came from Mehrdad Yasrebi, Cari Zoebelle, the bookkeeper, Carolyne Haycraft and Sepideh Hajarizadeh.

16. Carolyne Haycraft wrote the statement of program accomplishments for the

U.S. Treasury Criminal Investigation

CF287860

Exhibit 3
Page 2 of 6

Child Foundation Form 990's for 2007/05 through 2009/05. Carolyne Haycraft took the information from Child Foundation's website.

17. The total revenue amount on the 2007/05 through 2009/05 Child Foundation Form 990, line 12, comes from their Peachtree Accounting system which keeps track of deposits, prepares a general ledger, a check register and other functions. Wheatley does not prepare these reports she just reviews the summaries. Wheatley also reviewed the summaries from Child Foundation's Peachtree accounting system to arrive at the total for Program Services, line 13 of the Form 990's.

18. Wheatley stated that there were not any items that caused her to be concerned about the exempt activities of Child Foundation. However, Wheatley did state that she would like to see better documentation/accounting for Child Foundation's mission, i.e., how the funds are actually being used to provide services for specific children. For example, Wheatley does not see the detail regarding the actual child receiving benefits from Child Foundation and she should. Wheatley thinks that more information should be provided by the intermediaries (Armiti, Sehawi and Damavand), in English, about how the food is distributed to the children. Wheatley also would like to see more detail outlining how the money was spent in Iran and Afghanistan.

19. Line 75b, pg. 6, of the Child Foundation 2007/05 and Line 75b, pg. 5 of the 2008/05 Form 990 asks, "Are any officers or directors related?" If 'yes', attach a statement. When questioned regarding this statement Wheatley said that she just recently found out that Yasrebi and Fatemeh Sharif-Kazemi are married. Yasrebi and Sharif-Kazemi do not have the same last name. Wheatley said that there should have been a statement attached to the Form 990s for line 75b regarding the relationship between Yasrebi and Sharif-Kazemi, both directors of Child Foundation, but she (Wheatley) missed it. Yasrebi reviewed the Child Foundation 2007/05 and 2008/05 Form 990 returns and he also missed it. Salehi did not catch the mistakes either.

20. Line 77, pg. 6, of the Child Foundation 2007/05 Form 990 and line 77, pg. 5 of the 2008/05 Form 990 states, "Were any changes made in the organizing or governing documents but not reported to the IRS? If 'Yes' attach a conformed copy of the changes. When questioned why 'yes' is checked on the Forms 990, Wheatley stated that she does not have any of Child Foundation's minutes so she does not know why line 77 is marked 'yes.'

21. Regarding Line 3a of Part III, page 11 of the 2007/05 Child Foundation Form 990, Wheatley was told by Child Foundation employees that Child Foundation funds are used to pay educational costs in Iran and Afghanistan. Child Foundation pays the funds to one of the intermediaries in Dubai who then pays the educational costs of the needy in Iran and Afghanistan.

22. The following year on the 2008/05 Child Foundation Form 990, Line 3a of Part III, page 10 of the 2008/05 Form 990 is marked 'no.'

23. Wheatley was asked what information she had regarding the statement on the Child Foundation Financial Statements for 2007/05, attached to and made part of the 2007/05 Form 990, pg. 32: "The Organization holds funds in a foreign bank account that is not federally insured. Because of the necessity of maintaining this account, the Organization uses a reputable bank and monitors all transactions." Wheatley prepared this footnote. Wheatley explained that

CF287861

Exhibit 3
Page 3 of 6

Child Foundation has two foreign bank accounts, one in Dubai and one in Canada. Wheatley sees the monthly statement for the Dubai bank account. There is only $500 in the bank account in Canada and the account is not active. The balance in the Canadian bank account has not changed in three years. Any funds sent from the U.S. that are going to Iran go through the bank account in Dubai. Wheatley does not know who has control of the bank account in Dubai.

24. Regarding the statement on page 35, Child Foundation Financial Statements for 2007/05, attached to and made part of the 2007/05 Form 990, "The Organization sponsorship program provides humanitarian assistance for children in Indonesia and Iran. Changes in the political environment in those countries could disrupt those program activities." This statement was prepared by Cheryl Morgan.

25. Wheatley delivered the completed Child Foundation Form 990 for 2007/05 and 2008/05 to Child Foundation employee Hossein Salehi. Salehi is no longer employed by Child Foundation. Wheatley thinks that Yasrebi fired Salehi. Massoud Modarress took Salehi's place and is a much better employee than Salehi at paying attention to details.

26. On page 30 of the 2007/05 Child Foundation Form 990 is a statement about the Medical Relief Fund. Wheatley explained that the Medical Relief Fund was set up to treat cancer patients from Iran who come to the U.S. for medical treatment. Not all Child Foundation donations are sent out of the country. Some of the donations do not leave the U.S. Wheatley is aware of two children from Iran with cancer Iran whose treatment in the U.S. was heavily funded by Child Foundation.

27. The figure on line #58, pg. 20 on the 2007/05 Child Foundation Form 990, "Other Receivables" comes from Child Foundation's general ledger.

28. Wheatley does not know why the 2008/05 Child Foundation Form 990 would not be filed with the Internal Revenue Service. Wheatley set it up so that the Form 990 would be E-filed. Wheatley will check to see if she received confirmation that the 2008/05 Child Foundation Form 990 was E-filed.

29. Yasrebi sent all Child Foundation wire transfers to Damavand, Armiti, and Sehawi in Dubai. Yasrebi provided the wire transfer information on a summary spreadsheet to Wheatley. Wheatley provided a copy of the summary sheet to the Federal government when she received a grand jury subpoena during July of 2008.

30. Former Child Foundation employee, Hossein Salehi explained to Wheatley that Child Foundation uses three intermediary firms in Dubai to distribute humanitarian aid in Iran and Afghanistan; Damavand, Armiti and Sehawi. These three firms are recognized within the country where they provide the humanitarian aid. Child Foundation uses these intermediary firms to purchase food stuffs to be sent to Iran. The intermediary organization then distributes the food directly to the children. Wheatley has seen the reports regarding these transactions. Funds that go from Child Foundation U.S. to Afghanistan are distributed the same way, using one of the intermediary firms from Dubai.

31. When Cheryl Morgan audited Child Foundation's financial statements for 2007/05 she was adamant that Child Foundation fix its lack of internal controls. The lack of controls included: Yasrebi received and picked up Child Foundation's mail and Yasrebi was the only signator on Child Foundation's bank accounts. Now Child Foundation's accounting staff picks up the mail and Massoud

U.S. Treasury Criminal Investigation

CF287862

Exhibit 3
Page 4 of 6

Modarress, Child Foundation office manager, has signator authority on Child Foundation bank accounts.

32. Wheatley is aware of the economic sanctions against Iran. When Wheatley took on Child Foundation as a client it was under the assumption that Child Foundation was conforming to the regulations. Wheatley did not address the issue because she was not auditing Child Foundation, Cheryl Morgan was. It was during the auditing process with Cheryl that Wheatley learned how the Child Foundation system worked for distributing food in Iran and Afghanistan.

33. If Child Foundation has any related entities Wheatley is not aware of them. Child Foundation has a base of volunteers which actively solicit funds in different areas of the U.S., including Seattle and Virginia. All funds collected by the volunteers are sent to Child Foundation in Oregon.

34. Wheatley is not aware of any Child Foundation related foreign entities; however Child Foundation has an office in Dubai which opened in 2006 or 2007. The office in Dubai is incorporated and sponsors children in Dubai. The Dubai office also facilitates transfers such as humanitarian aid to Iran and Afghanistan.

35. Regarding the statement of program accomplishments, Modarress wanted to include the comment about complying with Title 50 USC 1705b (OFAC). Modarres made the changes to the program accomplishment statement and sent them to Wheatley.

36. Wheatley does not know why the program of statement accomplishments does not show that Child Foundation funds were sent to Iran. Child Foundation's website does not show that the funds go to Iran either. It did not occur to Wheatley to ask about Yasrebi Iran; she totally missed it.

37. Wheatley did not have a discussion with Yasrebi about Iran. It was not until this year (2009/05) that IRS added a new question on the Form 990 that asked what country does the organization send its funds to. Child Foundation sends approximately $1,000,000 a year to Iran and $200,000 per year to Afghanistan. Wheatley did not realize until she prepared the 2009/05 Child Foundation Form 990 that Child Foundation supported so many children in Iran, for the preparation of the 2007/05 and 2008/05 Child Foundation Form 990, Wheatley was only aware of the total number of children assisted.

38. Wheatley is aware that Child Foundation donated money to victims of the Southeast Asia Tsunami.

39. When questioned about First Investor Corporation Wheatley stated that she does not know anything about the corporation except that before she worked for Child Foundation the transaction with First Investor Corporation was cancelled out.

40. Cheryl Morgan asked Yasrebi how the employees in Iran were paid. Wheatley does not think that Yasrebi ever answered the question.

41. Special Agent Meyer and Revenue Agent Arndt thanked Wheatley for her time and ended the interview.

U.S. Treasury Criminal Investigation

CF287863

Exhibit 3
Page 5 of 6

Debra J. Meyer
Special Agent

Revenue Agent

I prepared this memorandum on October 16, 2009 after refreshing my memory with notes made during the interview.

Debra J. Meyer
Special Agent

U.S. Treasury Criminal Investigation

CF287864

Exhibit 3
Page 6 of 6