# Internal Revenue Service
## Criminal Investigation

# Memorandum of Interview

---

**In Re:**   Mehrdad Yasrebi & Child Foundation   **Location:**   Ron Chatterton's office
855 E. Berkeley Street
Gladstone, OR  97027

**Investigation #:**   930530171 & 930530224
**Date:**   October 22, 2008
**Time:**   9:10am-12:50pm
**Participant(s):**   Ronald Chatterton, P.C., Interviewee
Ben Barnum, Special Agent
Debra J. Meyer, Special Agent

1. On this date at approximately 9:10am Special Agent Ben Barnum and Special Agent Debra Meyer met with Ron Chatterton, Certified Public Accountant (CPA) at his office as previously arranged. SA Meyer greeted Chatterton and introduced SA Barnum. SA Meyer and SA Barnum both showed their credentials to Chatterton. Pursuant to questioning Chatterton answered substantially as follows:

2. Chatterton prepared Child Foundation's Form 990's Return of Organization Exempt from Income Tax for the years 2000/05, 2001/05 and 2002/05. Mehrdad Yasrebi, also known as Abu Yasrebi provided Chatterton with the necessary information to prepare these Form 990 returns. Chatterton only received information from Yasrebi regarding preparing Child Foundation's Form 990's for the years 2000/05, 2001/05 and 2002/05.

3. Chatterton prepared approximately two to three, Form 990's Return of Organization Exempt from Income Tax, per year for other clients, prior to preparing Child Foundation's Form 990's. Chatterton currently prepares four, Form 990 returns per year for other clients.

4. Once Chatterton completed a Child Foundation Form 990, it was Yasrebi's usual practice to come to Chatterton's office to pick it up. It was Yasrebi's responsibility to sign, date, and mail the completed Form 990 returns to the Internal Revenue Service. Chatterton did not witness Yasrebi signing any of the Child Foundation Form 990 returns.

5. After the Form 990 was completed for each year Chatterton prepared the returns, he did not review each line on the return with Yasrebi, but only the lines for which Yasrebi had questions.

6. Chatterton was asked if he could identify Mehrdad Yasrebi's signature from the Child Foundation 2000/05, 2001/05 and 2002/05 Form 990's Return of Organization Exempt from Income Tax filed with the Internal Revenue Service. Chatterton explained that he is not familiar with Yasrebi's signature so he does

Memorandum  Page 1 of 13                                     U.S. Treasury Criminal Investigation

CF287881

Exhibit 7
Page 1 of 13

not know if the three signatures on the Form 990's are Yasrebi's or not. Chatterton identified his own signature on these three Form 990's.

7. Chatterton normally reviews a client's bank statements when he prepares their Form 990's, but he also prepares these same clients' financial statements and sometimes does their bookkeeping. Chatterton was not hired to do any of Child Foundation's bookkeeping, with the exception of preparing Child Foundation's payroll, nor was he hired to prepare Child Foundation's financial statements. Chatterton does not know who did Child Foundation's bookkeeping during the time he was preparing Child Foundation's Form 990's.

8. Chatterton does not recall ever seeing any of Child Foundation's bank records. Chatterton does not recall whether or not he asked to review the Child Foundation bank records but if he did, there are no copies of the bank records in the Child Foundation file. Chatterton was only engaged to prepare Child Foundation's Form 990 returns for the years 2000/05, 2001/05 and 2002/05. Chatterton was not hired to conduct an audit of Child Foundation's financial statements.

9. Yasrebi and his wife, Fatemeh Sharif-Kazemi, did not receive a salary from Child Foundation for the years 2000/05, 2001/05 and 2002/05. Chatterton knows this from asking Yasrebi and also because he (Chatterton) has prepared Yasrebi's and Sharif-Kazemi's Individual Income tax returns since 2000. While Chatterton was preparing their personal income tax returns, he did not receive Form W-2's from Child Foundation for either Yasrebi or Sharif-Kazemi. When preparing the returns for 2000/05, 2001/05 and 2002/05 Chatterton also asked Yasrebi if any director or officer had received any reimbursement amounts over $1,000 from Child Foundation. According to Yasrebi, none of the directors received any Child Foundation reimbursements over $1,000.

10. If Child Foundation has related or sister organizations, Chatterton is not aware of them. The Child Foundation office in Iran is part of Child Foundation (U.S.). Chatterton has never heard of Child Foundation Canada. As far as Chatterton is aware Child Foundation only operates in Iran.

11. Chatterton is not familiar with the Office of Foreign Asset Control (OFAC) laws, nor was he aware that it is illegal to send funds to Iran without a license. Chatterton did not ask Yasrebi how Child Foundation sent funds to Iran, nor did he see documents showing where Child Foundation funds went. Yasrebi stated in documents provided to the IRS that Child Foundation would be assisting orphans in Iran. IRS approved Child Foundation's request for 501(c)3 status (tax exempt) so Chatterton assumed that it was okay.

**2000/05 Child Foundation Form 990:**

12. Initially Yasrebi contacted Chatterton about preparing the 2000/05 Child Foundation Form 990. Chatterton and Yasrebi met only a couple of days before the 2000/05 Form 990 was due to be filed with the IRS. Yasrebi met with Chatterton and provided him (Chatterton) with Child Foundation's prior year's Form 990 (1999/05) (MOI Exhibit #19), and a draft of a 2000/05 Form 990 (MOI Exhibit #19.5) both prepared by Mehrdad Yasrebi. Note: because of the extensive amount of documents reviewed during this interview, the documents will be assigned MOI exhibit numbers and attached to this memorandum.

CF287881

CF287882

Exhibit 7
Page 2 of 13

13. Chatterton was questioned why the total contribution and revenue figures were different on the draft 2000/05 Form 990 provided by Yasrebi versus the final Form 990 prepared by Chatterton.  Initially Chatterton was not sure and could not remember, but then stated that he would not have arbitrarily changed the figures.  Chatterton then reviewed both the draft Form 2000/05 Form 990 prepared by Yasrebi (MOI Exhibit #19.5) and the final 2000/05 Form 990 that Chatterton prepared.  Chatterton entered some figures on the calculator in order to determine why the numbers were different.  Chatterton mentioned that he prepared the 2000/05 Form 990 almost nine years ago and his memory is not as good as it used to be.

14. Chatterton recalled that on the draft 2000/05 Form 990 prepared by Yasrebi, Yasrebi originally included $245,000 as a contribution in total revenue, line 12 (MOI Exhibit #19.5).  According to Chatterton, most people think of incoming dollars as income.  This is a possible reason why initially Yasrebi included the $245,000 loan in income.  When Yasrebi met with Chatterton to discuss the preparation of the 2000/05 Child Foundation Form 990, Yasrebi told Chatterton that he had included $245,000 in total revenue as a contribution.  Yasrebi discussed that the $245,000 was actually an interest free loan from Dr. H. Lahiji to Child Foundation to be used to purchase an office building and land in Tehran, Iran.  Yasrebi said that Dr. H. Lahiji loaned $245,000 interest free to Child Foundation and that Lahiji was acting as a "bank" for Child Foundation, but he (Lahiji) wanted to be paid back for the loan.

15. Chatterton corrected the draft 2000/05 Form 990 prepared by Yasrebi by subtracting $245,000 from the total Contributions of $497,207.35, as shown on line 1d, to arrive at the total Contributions, line 1d figure of $252,208 as shown on the final 2000/05 Form 990 provided to Yasrebi to file with the Internal Revenue Service.

16. Yasrebi had reported the $245,000 purchase of the building/land on line 43a as other expense on the draft 1999 Form 990 (MOI Exhibit #19.5, page 2).  Chatterton made the corrections on the 2000/05 Child Foundation Form 990 by removing the $245,000 from other expense, line 43a.  To the balance sheet, Chatterton added a $245,000 note payable and a $245,000 asset of building/land.

17. Chatterton stated that Child Foundation must not have repaid the loan to Lahiji while he (Chatterton) was still preparing Child Foundation's Form 990's because the note payable to Lahiji is still shown on the Child Foundation 2001/05 and 2002/05 Form 990's.

18. Chatterton does not recall if he asked to review loan documents for this $245,000 loan.  Chatterton does not recall seeing any loan documents and there are no copies of loan documents in the file.

19. When questioned why there was no depreciation shown on the 1999 Form 990, Chatterton said that it could be an error, or more likely he did not know the value of the building versus the value of the land.  Chatterton explained that only the value of the building is allowed to be depreciated.

20. When shown check #1569 for $200,000 dated 12/17/1999 payable to Child Foundation (MOI Exhibit #9), and check #1575 for $75,000 dated 12/18/1999 payable to Child Foundation both from Hossein Lahiji of McAllen, Texas, (MOI Exhibit #10) Chatterton said that he might assume that these checks are part of

CF287882

CF287883

Exhibit 7
Page 3 of 13

the $245,000 loan for the purchase of the land and building in Iran. However, Chatterton has never seen these checks before. If Chatterton had seen the checks he would have asked Yasrebi what the checks were for, and why the checks add up to $275,000 instead of $245,000. Chatterton did not think it likely that an individual would include a donation and a loan on the same check.

21. When questioned whether or not an individual could take a charitable donation on their Individual Income tax return for a loan, Chatterton said "no", unless the loan is forgiven, then the donor can take the charitable deduction the year the loan is forgiven.

22. When asked what questions were asked of Yasrebi regarding compensation, salaries or reimbursements from Child Foundation, Chatterton said that he questioned Yasrebi on who the Child Foundation directors were, what their compensation was, and how many hours each director worked. This information is shown on the 2000/05 Child Foundation Form 990, Part V, page 4 as:

> Mehrdad Yasrebi, Director, compensation 0, contributions to employee benefit plan 0, expense account & other allowances 0

> Fatemeh Sharif-Kazemi, Treasurer, compensation 0, contributions to employee benefit plan 0, expense account & other allowances 0

> Assad Azemi, FD Raise Dir, compensation 0, contributions to employee benefit plan 0, expense account & other allowances 0

23. Chatterton would also have asked Yasrebi about the payment of compensation for officers or directors in order to complete Part II, line 25, (compensation of officers), and Schedule A, Part III, line 2d where the box is checked "no" regarding any payment to directors or officers for more than $1,000 for the 2000/05 Child Foundation Form 990. Yasrebi told Chatterton that the Child Foundation directors did not receive compensation.

24. Chatterton was shown (MOI Exhibit #1), Child Foundation check #598 dated 7/12/1999 payable to Dr. Ali Yasrebi (Mehrdad Yasrebi's father) for $3,500, and endorsed by Mehrdad Yasrebi. Chatterton would not have seen this check unless Yasrebi chose to show it to him since he (Chatterton) never reviewed any Child Foundation checks. Chatterton was asked if he had seen this check, would he have reported it as either compensation or reimbursement. Chatterton said he would have to ask additional questions to determine if the check was either compensation or reimbursement before he reported it on the Form 990. Chatterton also explained that it is unusual for a CPA to review cancelled checks, usually only the bank statements would be reviewed. It is the client's responsibility to report income or reimbursements to a return preparer.

25. Chatterton was shown a sheet of paper with the notation "10/17 Due." This sheet of paper was among Chatterton's work papers in the Child Foundation file. Chatterton does not recall what this notation means, but thinks it may be the possible due date for the Form 990 or the date that Yasrebi wanted to have the return completed by (MOI Exhibit #20.5).

26. The notation, "photo IRS letter" is a reminder note written by Chatterton to

CF287883

CF287884

Exhibit 7
Page 4 of 13

photocopy the IRS determination letter for Chatterton's file (MOI Exhibit #20.5).

27. Chatterton would have asked Yasrebi whether or not there were any substantial donors who contributed over $5,000 or more than 2% of the amount on 1d on the 2000/05 Form 990 if the IRS requires it. However, since it was a long time ago, Chatterton does not recall specifically if he asked this question. There is no list of donors who contributed over $5,000 attached to the 2000/05 Form 990.

28. Chatterton would also have attached a list to the 2000/05 Form 990 showing the names and amount contributed by each person whose gifts for 1995 through 1998 exceeded the amount on Schedule A, Part IV, line 26A. Chatterton does not recall specifically asking this question, but he would have asked since it is required by the IRS. The figures for the support schedule on Schedule A, Part IV, line 15 (Gifts, grants and contributions received for the years 1995-1998) for the 2000/05 Form 990 were taken from the draft 1999/05 Form 990 provided by Yasrebi (MOI Exhibit #19.5).

29. The information for the 2000/05 Form 990, Part III, page 2 was taken from the draft 2000/05 Form 990 provided by Yasrebi. The statement taken from the draft reads, "Child Foundation supported 1,200 children and their families during 1999 fiscal year. Supports (sic) were included payments for education, shelter, medical expenses, food and clothing" (MOI Exhibit #19.5, Part III, page 2).

30. It is Chatterton's understanding that the 1,200 children and their families as described on the 2000/05 Form 990, Part III, page 2, are supported by Child Foundation, and all of them live in Iran.

31. Chatterton was shown a cover sheet dated 10/09/2000 for the 2000/05 Child Foundation Form 990 and the Oregon Form CT-12. The cover sheet provided the mailing address of the IRS and the Oregon Department of Justice (MOI Exhibit #17). Chatterton explained that Yasrebi would come to his office to pick up the returns when they were completed. This package of returns was likely picked up by Yasrebi at the office since that was his usual practice. It was Yasrebi's responsibility to mail the returns in the envelopes provided.

### 2001/05 Child Foundation Form 990

32. Chatterton gathered the information to prepare the Child Foundation 2001/05 Form 990 from Yasrebi. Chatterton used the worksheets provided by Yasrebi to prepare the 2001/05 Form 990 (MOI Exhibit #18). All information used to prepare this return was provided by Yasrebi.

33. Chatterton questioned Yasrebi regarding compensation and reimbursement for the Child Foundation 2001/05 Form 990 the same as he did for the Child Foundation 2000/05 Form 990. When asked what questions were asked of Yasrebi regarding compensation, salaries or reimbursements from Child Foundation, Chatterton said that he questioned Yasrebi on who the directors were, what their compensation was and how many hours each director worked. This information is shown on the 2001/05 Child Foundation Form 990, Part V, page 4 as:

Mehrdad Yasrebi, Director, compensation 0, contributions to employee benefit plan 0, expense account & other allowances 0

CF287884

CF287885

Exhibit 7
Page 5 of 13

Fatemeh Sharif-Kazemi, Treasurer, compensation 0, contributions to employee benefit plan 0, expense account & other allowances 0

Assad Azemi, FD Raise Dir, compensation 0, contributions to employee benefit plan 0, expense account & other allowances 0

34. If Chatterton was doing the payroll at that time, he would already have had the information available about compensation for both Yasrebi and Sharif-Kazemi.

35. Chatterton also asked Yasrebi about the payment of compensation for officers or directors in order to complete Schedule A, Part III, line 2d where the box is checked "no" regarding any payment to directors or officers for more than $1,000 for the 2001/05 Child Foundation Form 990. Yasrebi told Chatterton that no compensation was paid to Child Foundation directors.

36. Chatterton has never seen Child Foundation check #848 dated 12/01/2000 made payable to Fatemeh Sharif-Kazemi for $20,000 with the notation "loan" (MOI Exhibit #2). Chatterton does not believe that a non-profit organization is allowed to make loans to its officers. If Chatterton had seen this check he would have been suspicious and would not have prepared the Child Foundation 2001/05 Form 990. Yasrebi did not provide Chatterton with any information for his and Sharif-Kazemi's Individual Income tax returns, Schedule A that showed interest expense to Child Foundation.

37. Chatterton has never seen Child Foundation check #930 dated 05/21/2001 for $1,500 made payable to Mehrdad Yasrebi. If Chatterton had seen this check he would have questioned Yasrebi and reported it on the Child Foundation 2001/05 Form 990 as either compensation or reimbursement (MOI Exhibit #3).

38. Chatterton has never seen Child Foundation check #940 dated 05/13/2001 for $42,000 made payable to cash or the attached cashier's check dated 05/30/2001 for $42,000 made payable to Mehrdad Yasrebi (MOI Exhibit #4). If Chatterton had seen this check he would have questioned Yasrebi further and reported it on the Child Foundation 2001/05 Form 990 as either compensation or reimbursement since it is required by the IRS.

39. Chatterton has never seen the wire transfer dated 05/29/2001 payable to Kouroush Modarress for $87,500 and signed by Abu Yasrebi (MOI Exhibit #5). Chatterton was not aware that Modarress is related to Yasrebi. If Chatterton had seen this wire transfer he would have questioned Yasrebi further regarding what the wire transfer was used for and reported it on the Child Form 990

40. Chatterton asked Yasrebi if there were substantial donors to be reported on the Child Foundation 2001/05 Form 990. However, Chatterton does not see any back up documents in the files so he is not sure if Yasrebi would have provided the information in writing or in person. If Chatterton received the information about substantial contributors in writing he assumes a copy would be in the Child Foundation file. If Chatterton had received information that there were substantial donors, he would have attached the list of substantial contributors to the Child Foundation 2001/05 Form 990.

41. Chatterton has never seen check #1902 dated 09/20/2000 in the amount of $400,000 from Hossein Lahiji payable to Child Foundation (MOI Exhibit #11). If Chatterton had seen the check he would have asked Yasrebi to explain what

CF287885

CF287886

Exhibit 7
Page 6 of 13

the check was for.  Then Chatterton would have determined if it was a contribution or loan and reported it on the 2001/05 Child Foundation Form 990 accordingly.

42. Chatterton has never seen check #2015 dated 12/04/2000 in the amount of $200,000 from Hossein Lahiji payable to Child Foundation (MOI Exhibit #12).  If Chatterton had seen the check he would have asked Yasrebi to explain what the check was for.  Chatterton would need to learn additional facts to determine if it was a contribution or loan and report it on the 2001/05 Child Foundation Form 990 accordingly.

43. Chatterton would have asked Yasrebi whether or not there were any substantial donors who contributed over $5,000 or more than 2% of the amount on 1d on the 2001/05 Form 990 since the IRS requires it.  There is no list of donors who contributed over $5,000 attached to the 2001/05 Form 990.

44. Chatterton would also have attached a list to the 2001/05 Form 990 showing the names and amount contributed by each person whose gifts for 1996 through 1999 exceeded the amount on Part IV, page 3, line 26A, $13,632.

45. The figures for the Schedule A, Part IV, page 3, line 15 (Gifts, grants and contributions received for the years 1996-1999) for the 2001/05 Form 990 were taken from the previous year's Form 990 (2000/05).

46. Chatterton would have used the work sheets provided by Yasrebi to determine total revenue on the 2001/05 Child Foundation Form 990 (MOI Exhibit #18). Chatterton does not recall reviewing bank statements and assumes if he did that copies of the statements would be in the Child Foundation file.  Chatterton did not receive bank statements for the other years.  Chatterton did not review any Child Foundation checks.

47. Chatterton's worksheet (MOI Exhibit 18) has a notation that states, "Part II is now 3,000 children from 1,200.  Chatterton explained that the number of children that Child Foundation helped increased from 1,200 to 3,000. Chatterton's worksheet (MOI Exhibit 18) also has a notation that states, "Auction=$136,059.90 included in line 1 a" and "officers etc. sal y.)

48. Chatterton would have asked Yasrebi about the $245,000 loan from Lahiji, which was not repaid since it is still reported on the 2001/05 Form 990.

49. Chatterton was shown a cover sheet dated 04/15/2002 for the 2001/05 Child Foundation Form 990 and the Oregon Form CT-12.  The cover sheet provided the mailing address of the IRS and the Oregon Department of Justice (MOI Exhibit 17).  Chatterton explained that Yasrebi would come to his office to pick up the returns when they were completed.  This package of returns was likely picked up by Yasrebi at the office since that was his usual practice.  It was Yasrebi's responsibility to mail the returns in the envelopes provided.

### 2002/05 Child Foundation Form 990

50. Chatterton gathered the information to prepare the Child Foundation 2002/05 Form 990 using the worksheet Yasrebi provided (MOI Exhibit #14).  All information used to prepare the 2002/05 Form 990 was provided by Yasrebi. Chatterton relied on the figures as provided by Yasrebi and did not review any other documents including bank records, to prepare the 2002/05 Form 990.  At the bottom of the worksheet is a notation written by Chatterton which explains the break out of payroll taxes versus the total payroll.

CF287886

CF287887

Exhibit 7
Page 7 of 13

51. Chatterton would have questioned Yasrebi regarding compensation and reimbursement for the Child Foundation 2002/05 Form 990 the same as he did for the Child Foundation 2000/05 and 2001/05 Form 990's. When asked what questions were asked of Yasrebi regarding compensation, salaries or reimbursements from Child Foundation, Chatterton said that he questioned Yasrebi on who the directors were, what their compensation was and how many hours each director worked.  This information is shown on the 2002/05 Child Foundation Form 990, Part V, (Statement 5) as:

Mehrdad Yasrebi, Director, compensation 0, contributions to employee benefit plan 0, expense account & other allowances 0

Fatemeh Sharif-Kazemi, Treasurer, compensation 0, contributions to employee benefit plan 0, expense account & other allowances 0

Assad Azemi, FD Raise Dir, compensation 0, contributions to employee benefit plan 0, expense account & other allowances 0

Sudabeh Shoja, Director, compensation 0, contributions to employee benefit plan 0, expense account & other allowances 0

52. Chatterton would have asked Yasrebi about the payment of compensation for officers or directors in order to complete Schedule A, Part III, line 2d where the box is checked "no" that there were not any payments to directors or officers for more than $1,000 for the 2002/05 Child Foundation Form 990.  The IRS requires this information.

53. Chatterton has never seen a copy of Soaring Eagle check #1049 dated 07/25/2001 payable to Child Foundation/Yasrebi for $55,000 or the accompanying deposit slip for the account of Ali Yasrebi and Ameneh Modarress (Yasrebi's parents) (MOI Exhibit #6).  If Chatterton would have seen this check he would have asked for additional facts in order to determine how to report it on the 2002/05 Child Foundation Form 990.  If Chatterton had seen this check, he would not have understood why it was not deposited into the Child Foundation account. Chatterton also said that if Child Foundation was audited during this time period, these kinds of transactions may have been picked up by the auditor.

54. Chatterton has never seen a copy of a Soaring Eagle check #1210 dated 08/09/2001 payable to Child Foundation/Yasrebi for $41,000.  If Chatterton would have seen this check he would have asked for additional facts in order to determine how to report it on the 2002/05 Child Foundation Form 990 (MOI Exhibit 7).

55. Chatterton has never seen a copy of Child Foundation check #1258 dated 04/08/2002 payable to BofA for $12,015 with the notation "Mr. Amin Modaress" (MOI Exhibit #8).  Chatterton was not aware that Modaress is related to Yasrebi.  If Chatterton would have seen this check he would have asked for additional facts in order to determine how to report it on the 2002/05 Child Foundation Form 990.

56. Chatterton has never seen a copy of check #2616 from Hossein Lahiji in the

CF287887

CF287888

Exhibit 7
Page 8 of 13

amount of $250,000, dated 12/31/2001 and payable to Child Foundation or the accompanying Child Foundation deposit slip (MOI Exhibit #13). If Chatterton would have seen this check he would have asked Yasrebi for additional facts in order to determine how to report it on the 2002/05 Child Foundation Form 990 as a donation or a loan.

57. For the Child Foundation 2002/05 Form 990 Chatterton asked Yasrebi if there were substantial donors to be reported. Chatterton asked Yasrebi for the substantial donor's names, addresses and the amount they contributed. There are two contributors shown on the Schedule B for the 2002/05 Form 990, Mr. & Mrs. Theodore Petroulas for $77,500 and The Ahoora Foundation for $30,000. Chatterton compared the 2002/05 Schedule B to the worksheet and reviewed the Form 990 for 2002/05 provided by Yasrebi (MOI Exhibit #14) and determined that the other donations shown on the worksheet did not meet the threshold amount as shown on the 2002/05 Schedule A, Part IV-A, line 26 of $22,089. Hossein Lahiji was not shown as a contributor on Yasrebi's worksheet.

58. Yasrebi never provided information that Hossein Lahiji was a substantial contributor. Chatterton only discussed Lahiji with Yasrebi as the individual who loaned the Child Foundation $245,000 the first time he met with Yasrebi to prepare the Child Foundation Form 990 for 2000/05.

59. In order to prepare the 2002/05 Form 990 Chatterton would have asked Yasrebi about the $245,000 loan from Lahiji which Chatterton assumes was not repaid since it is still reported on the Child Foundation 2002/05 Form 990.

60. The beginning cash balance amount of $4,757 as shown on the 2002/05 Form 990, Part IV Balance sheet, page 3, Cash, Beginning of year, came from the prior year's 2001/05 Form 990, Part IV. Balance sheet, page 3, Cash, End of year as shown on page 3.

61. The end of year cash balance amount of $5,000 as shown on Part IV, Balance Sheet, page 3 of the Child Foundation 2002/05 Form 990, was provided by Yasrebi. Chatterton had questions about whether the ending cash balance figure of $5,000 was correct because that would mean that Child Foundation had a negative balance (See note at bottom of MOI Exhibit #15, "Neg balance"). Chatterton needed clarification because the records he was provided showed the following (MOI #Exhibit 15):

| | |
|---|---|
| Cash In Bank Beg of Year | $4,557 |
| Contributions | $964,176 |
| Less Program Services | $1,025,991 |
| Expenses | $78,270 |
| Balance | (135,328) |

62. Either Yasrebi overstated expenses or the contributions were understated. Or it is possible that Yasrebi could have included Pledges payable in the contributions figure of $964,176. Federal Statements, Statement 4, page 1 shows Pledges payable of $62,057. When asked to explain the pledges payable of $62,057 as reported on Statement 4 of the Child Foundation 2002/05 Form 990, Chatterton said that Yasrebi likely told him about these pledges so they could be claimed as an asset.

CF287888

CF287889

Exhibit 7
Page 9 of 13

63. According to Yasrebi these pledges had not been deposited yet and that could account for the discrepancy. Another possibility was that the $78,270 shouldn't have been included in expenses.  When asked if it were possible that Yasrebi provided false numbers for the ending cash balance, Chatterton stated, "yes." Chatterton does not recall reviewing bank records for the ending balance figure. Yasrebi either provided the information in person or over the telephone.

64. It is Chatterton's understanding that the 3,000 children and their families assisted by Child Foundation as described on the 2002/05 Form 990, Part III, page 2, live in Iran.

65. The IRS letter dated May 13, 2002 sent to Child Foundation regarding the failure to submit a Schedule B for the tax period ending 05/31/2001 was sent directly to the Child Foundation at PO Box 1364, Clackamas, Oregon  97015 (MOI Exhibit #16).  Yasrebi gave Chatterton a copy of the letter.  Chatterton explained to Yasrebi what the problem was; that Yasrebi needed to provide the IRS with a Schedule B, Schedule of Contributors and told Yasrebi how to follow up on it.  Chatterton does not believe that he (Chatterton) did any follow up based on the fact that there are no letters to the IRS written by Chatterton in the file.  Chatterton left the issue for Yasrebi to fix after he (Chatterton) told Yasrebi how to file the Schedule B.

**Mehrdad Yasrebi and Fatemeh Sharif-Kazemi's Individual Income Tax Returns For the Years 2000-2007**

66. Chatterton prepared Yasrebi and Sharif-Kazemi's Individual Income tax returns, Forms 1040 for the years 2000 through 2007.  These Form 1040 returns included Yasrebi's 2002 and Sharif-Kazemi's 2002, Married Filing Separate Returns and Yasrebi's and Sharif-Kazemi's Married Filing Jointly Returns for the years 2000 through 2001 and 2003 through 2007.  At Yasrebi's request, Chatterton prepared Ameneh Modarress' Form 1040, Individual Income tax return for the year 2007.   Modarress is Yasrebi's mother.

67. For each year that Chatterton prepared the Individual Income tax returns for Yasrebi and Sharif-Kazemi, they were provided with an organizer (also called a questionnaire) in order to obtain the necessary information to prepare the returns.  Once the organizer was completed by Yasrebi, Chatterton prepared the return.  Chatterton's clients are advised to review the return before signing it and to call if they have any questions.  It was Yasrebi's usual practice to drop off the completed organizer at Chatterton's office.

68. It is the client's responsibility to provide Chatterton with all sources of income, including Forms W-2, Wage and Tax Statements and Forms 1099, Miscellaneous Income, and to properly fill out the organizer.

69. Yasrebi claimed his parents, Ali Yasrebi and Ameneh Modarress as dependents from the first year (2000) that Chatterton prepared Yasrebi and Sharif-Kazemi's U.S. Individual Income tax return, Form 1040.  While Chatterton was preparing the 2000 Form 1040, he asked Yasrebi if his parents lived with him.  Yasrebi told Chatterton that his parents lived with him and had no income.  Chatterton did not ask Yasrebi about his parents' citizenship since they both had Social Security numbers which had to be shown on the tax returns and appeared to be valid.  The IRS will reject tax returns if the dependents claimed on a tax return do not have a valid Social Security number.

CF287889

CF287890

Exhibit 7
Page 10 of 13

Yasrebi and Sharif-Kazemi's U.S. Individual Income tax returns were not rejected by the IRS so Chatterton assumed the parents' Social Security numbers were valid.  For some unknown reason, Yasrebi did not claim his parents as dependents on his 2006 Individual Income tax return.  Chatterton assumed that the parents lived with some other family member during 2006.

70. For each year that Chatterton prepared his U.S. Individual Income tax returns, Forms 1040, Yasrebi provided a summary of medical expenses.  Chatterton explained to Yasrebi that the IRS required him to retain his medical receipts.

71. Yasrebi provided a summary figure for the charitable deductions taken on his U.S. Individual Income tax returns, Forms 1040 for the years 2000 through 2007.  Chatterton did not review any supporting documents.  Chatterton advised Yasrebi to keep copies of his donation receipts as required by the IRS.

72. The organizer provided to Yasrebi asks if the client has a foreign bank account.  Yasrebi checked no on the organizer that he did not have a foreign bank account for the years 2000-2007.

73. The organizer for Yasrebi and Fatemeh Sharif-Kazemi's 2000 U.S. Individual Income tax return, Form 1040 (MOI Exhibit #31) shows cash charitable deductions of $9,850 to Child Foundation.

74. The organizer for Yasrebi and Sharif-Kazemi's 2001 U.S. Individual Income tax return, Form 1040 shows cash charitable contributions to Child Foundation for $17,500 (MOI Exhibit #30).

75. The organizer for Yasrebi's 2002 Form 1040 Individual Income tax return shows cash charitable contributions to Child Foundation for $18,743.29.  (MOI Exhibit #27).  There is a note in the file dated April 4, 2003 addressed to Chatterton in which Yasrebi states he would like to file his return separately from his wife and he does not want his tax information shared with his wife (MOI Exhibit #28).  Yasrebi asked Chatterton to prepare his 2002 Form 1040, Individual Income tax return married filing separately.

76. The organizer for Yasrebi's 2003 U.S. Individual Income tax return, Form 1040, shows cash charitable contributions to Child Foundation for $19,510 (MOI Exhibit #24).

77. The organizer for Yasrebi's 2005 U.S. Individual Income tax return, Form 1040, shows cash charitable contributions to Child Foundation for $19,700 (MOI Exhibit #41).

78. The organizer for Yasrebi's 2006 U.S. Individual Income tax return, Form 1040, shows cash charitable contributions to Child Foundation for $18,600 (MOI Exhibit #37).

79. The organizer for Yasrebi's 2007 U.S. Individual Income tax return, Form 1040, shows cash charitable contributions to Child Foundation for $18,600 (MOI Exhibit #34).

80. Chatterton explained that the income from the Bell Group as shown on Yasrebi's 2002, 2003, 2004, and 2005 U.S. Individual Income tax returns, Form 1040's was income received by Yasrebi for speaking engagements.  Yasrebi received a Form 1099 for income from the Bell Group for these speaking engagements.

81. While Chatterton was preparing the Individual Income tax return for 2005 Yasrebi called and asked his advice about buying a rental property as an investment.  Chatterton advised that Yasrebi would be limited on taking any

CF287890

CF287891

Exhibit 7
Page 11 of 13

loss on the property because of his income level. Yasrebi never purchased the property (MOI Exhibit #42).

82. Chatterton does not have any e-mails from Yasrebi, nor does his office.

83. If Chatterton had seen the Child Foundation checks MOI Exhibits #1-8 as described in prior paragraphs, Chatterton would have asked Yasrebi what the checks were for and reported it on Yasrebi's Individual Income tax returns if he determined these checks were compensation.

### 2000 U.S. Individual Income Tax Return, Form 1040, Ameneh Modarress

84. Yasrebi showed Chatterton a notice from the IRS addressed to Ameneh Modarress stating that she needed to report stock sales for the year 2000 (MOI Exhibit #25). Chatterton explained to Yasrebi that $470,809 in stock sales in his mother's name had to be reported to the IRS (MOI Exhibits #20, 26). Chatterton advised Yasrebi that Modarress was required to file a tax return with the IRS reporting the stock sales. No taxes were due, but the sales information had to be provided to the IRS. Chatterton did not meet Modarress; all information regarding her tax return was provided by Yasrebi.

### 2002 U.S. Individual Income Tax Return, Form 1040, Saideh (Fatemeh) Sharif-Kazemi

85. Sharif-Kazemi provided a worksheet to Chatterton which shows charitable donations of $500 for her U.S. Individual Income tax return, Form 1040 for the year 2002 (MOI Exhibit #23). Sharif-Kazemi filed Married Filing Separately for this year.

84. Special Agent's Barnum and Meyer thanked Chatterton for his time. SA Meyer provided her business card and SA Barnum's office telephone number and they ended the interview.

Debra J. Meyer
Special Agent

U.S. Treasury Criminal Investigation

CF287892

Exhibit 7
Page 12 of 13

*Benjamin S. Barn*

Ben Barnum
Special Agent


I prepared this memorandum on October 22, 2008, after refreshing my memory from notes made during and immediately after the interview with Ron Chatterton.


*Debra J. Meyer*

Debra J. Meyer
Special Agent

U.S. Treasury Criminal Investigation

CF287893

Exhibit 7
Page 13 of 13