NON-COMPLIANCE OF CHILD FOUNDATION
WITH
THE OFFICE OF FOREIGN ASSET CONTROL, US DEPT OF TREASURY
AND
NON-COMPLIANCE WITH IRS RULES AND REGULATIONS GOVERNING
501(C)(3) NON-PROFIT CORPORATIONS

OVERVIEW:

This paper is written to provide relevant information to the Board of Directors of Child Foundation as it pertains to:

1) OFAC Compliance
2) Financial Compliance with IRS Rules governing 501(c)(3) corporations.

The information contained in this document came about when we discovered that the CF-Canada website was registered by a member of the CF-US Board of Directors under the name of Child Foundation, and, that the website was being hosted (or sits resident) on a web server in Tehran, Iran.

As of the writing of this report, I have been in the process of transferring the domain registration, childfoundationcanada.org, to a Canadian company in the name of a member of CF Canada's Board of Directors using their address and contact information. Additionally, I have undertaken the task to move the website from Iran to a hosting site in Canada.

There are other considerations involving the clerical involvement of CF USA staff in relation to CF Canada operations and those will be addressed and explained to you in this paper.

While working on this particular problem, I re-read the OFAC Rules and Regulations concerning connectivity to Iran either through websites or direct linkage by remote access so they may obtain financial information relating to the donated funds received by CF US as they relate to specific children in the programs.

Questions and concerns came to my mind whether or not the connectivity we have with CF Iran, CF Canada and CF Switzerland is in compliance with OFAC Rules and Regulations.

I contacted CF US's counsel, Dan Fisher, with the permission of Dr. Yasrebi, and asked Mr. Fisher to address these concerns. His initial response included a request for further, more detailed information specific to the concerns he was asked to respond to. The information herein provided to you is based upon the second response I received from him and a second, more annotated response I sought from him while compiling this information

The auditing firm of Jon Resnick, CPA, who conducted last year's audit and is currently providing audit services for the fiscal year ending May 31, 2006, has asked me to provide the process by which we separate designated and restricted donations received by CF USA from those donations that are of a non-restricted or designated nature. To assist you, I have provided IRS

Exhibit 19
Page 1 of 8

rules and regulations that relate to these definitions and what is required by CF US to account for and report such donations for audit.

**RESTRICTED FUNDS** - Contributions which are designated by the donor for a specific use. **Restricted funds** can be designated by the donor for a specific use or for use during a specific period of time. The limitation expires at a defined time or when certain activities have been performed.

Restricted funds would also include those funds received through specific fundraising events and/or activities pursued by CF US. For example, for the Back to School mailing CF USA did recently, the intent was to raise funds for children for school and not for specific children. However, the mailing that was sent to the potential donors advertised that their donation would be used specifically for their sponsored child. Although CF US was seeking funds to further its educational programs and goals, our advertising restricted the use of such funds for the specific child of the sponsor/donor.

**DESIGNATED FUNDS** – These are funds designated, generally by the board of directors, for a specific use. For example, CF US received funds from The Alavi Foundation for Hurricane Katrina Relief. How the funds were spent for the victims of Katrina were **designated** by the Board of Directors.

Although CF US provides a disclaimer on materials where donations are being sought, such as invoices, mail fundraising, and the US website, for example, Mr. Resnick has concerns that this may not be sufficient in the interpretation of FASB (GAAP) regulations to allow CF US to spend solicited funds for other than the purpose for which they were intended by the sponsor/donor.

These are the overall concerns I have for the current corporate structure and accounting practices that will be addressed in this document. Listed below are the individual items of concerned that include the current practice, the legal question regarding that practice, the law, rule or regulation governing that practice and a change to that current practice to bring CF US into full OFAC and IRS compliance. Details to each area of concern follow the items listed below.

LISTED AREAS OF CONCERN - OFAC

1) Placement of CF Canada website in Tehran, Iran (currently in the process of being changed).
2) Registration of CF Canada website under the CF US name and through the name of a CF US Board Member (currently in the process of being changed).
3) Facilitating the transfer of funds to a regulated country:
   a. Processing CF Canada credit card transactions in the CF Main office (Portland, OR).
   b. Printing and mailing of invoices and doing fundraising mailings to sponsors/donors in Canada from the CF Main office.

Exhibit 19
Page 2 of 8

    c. Posting credit card, cash and check transactions in the CF Canada database that is held resident on the terminal server in the CF Main office.

    d. Providing access to CF Main database specific to use by CF Canada and CF Switzerland.

    e. CF Board of Directors controlling and directing the activities of CF Canada through its daily operation and website.

4) Remote connectivity by CF Iran to CF US server.

    a. Providing read only access to CF Iran that allows them to print CF Canada, CF Switzerland and CF US reports that provides information about donations received by those agencies that has been applied to specific children for specific purposes.

    b. Providing remote access to CF Canada and CF Switzerland.

## LISTED AREAS OF CONCERN – IRS

1) Use of restricted funds for a purpose other than which they were donated.

OFFICE OF FOREIGN ASSET CONTROL

ITEM 1 – Placement of CF Canada website in Tehran, Iran

Currently, the CF Canada website is hosted by a company in Tehran, Iran, called OurIran.net. This hosting service has been provided CF Canada free of charge. This seems to be a legal transaction between two separate companies who legally can conduct such a transaction.

However, underlying this transaction are several concerns. First, this transaction was conducted by a member of the CF US Board of Directors. Secondly, staff and the CF US Board of Directors have been facilitating the development of this website for the purpose of soliciting donated funds outside of the United States that will be provided directly to CF Iran.

This may be considered to be a 'back door' approach and could be a violation of 31 CFR 560.206 and 560.417 that refers to facilitation; changes of policies and procedures; and referral of business opportunities offshore. Specifically, 560.417, paragraph (c), states *'Changes the operating policies and procedures of a particular affiliate with the specific purpose of facilitating transactions that would be prohibited by this part if performed by a United States person or from the United States.'*

CF US has undertaken steps to move the CF Canada website from the current host provider and placing it in Canada through a company called DNN Montreal. We are working with the technicians of Netropole, Inc, who upgraded the security to our US website donation pages and created the "Purchase Ticket" page recently.

ITEM 2 – REGISTRATION AND OWNERSHIP OF CF CANADA DOMAIN NAME

The domain name of 'childfoundationcanada.org' is currently registered to a Board member of Child Foundation, a US based non-profit corporation

Exhibit 19
Page 3 of 8

operating under Chapter 501(c)(3). Please refer to Document #1, attached hereto. This document lists the technical and legal information that pertains to the 'childfoundationcanada.org' domain name.

As cited in Item 1, above, this may be a direct violation of 31 CFR 560.206 and 560.417.

In this instance as well, CF US has undertaken steps to have the domain name registration transferred from Register.com based in New York City to DNN Montreal in the name of a Board Member of CF Canada and paid for by CF Canada.

**NOTE:** Although these two actions are currently being taken to bring CF US more in compliance with OFAC rules and regulations, there are several outstanding concerns regarding the activities of CF Board Members and staff in relation to the operation of the CF Canada website.

ITEM 3 – FACILITATING THE TRANSFER OF FUNDS TO A REGULATED COUNTRY

As cited in ITEMS 1 and 2, above, there is a close connection between CF US and CF Canada through the CF Canada website and this is currently being addressed. However, the use of the CF Canada website is more formally used as an extension of the CF US website by the Board of Directors for the solicitation of funds through advertising events sponsored by CF US held in outside the United States. Although this is a legal activity outside of the United States, it may be considered to be a facilitation of funds that ultimately be transferred to Iran if the events are paid for by CF US funds and facilitated by US persons.

The sub-paragraphs listed under ITEM 3 are functions currently undertaken by paid staff of CF US on behalf of CF Canada. Each function, although clerical by nature seem to fall within the scope of restrictions based upon 31 CFR 560.204, 560.206. Pursuant to these citations, *United States persons cannot engage in any trade related transactions involving Iran* (31 CFR 560.204, 560.206) *other than exempt transactions such as the provision of informational materials or the donation of food, clothing and medicine purchased outside Iran.*

Additionally, 31 CFR 538.407, Sudanese Sanctions Regulations, provides a "clerical exception" that exempts activities by US persons relating to non-US person transactions if the activities are merely clerical in nature. This citation states *"Activity of a purely clerical ore reporting nature that does not further trade or financial transactions with Sudan or the Government of Sudan is not considered prohibited facilitation. For example, reporting on the results of a subsidiary's trade with Sudan is not prohibited, while financing or insuring that trade or warranting the quality of goods sold by a subsidiary to the Government of Sudan constitutes prohibited facilitation."*

The Office of Foreign Asset Control has never clearly confirmed that this clerical exception in the Sudan regulations also applies to the Iranian regulations, therefore clerical functions by paid CF US staff may be in violation of 31 CFR 560. In his e-mail of Sep 27 06, Mr. Fisher writes, *'if CICF's* [CF Canada] *activities extend beyond these boundaries* [exempt transactions as provided in the CFR], *such as  by making direct transfers of*

Exhibit 19
Page 4 of 8

cash to person's in Iran, the CF USA cannot engage in prohibited facilitation of CICF activities.  Providing back-office support to CICF clearly facilitates their operations, the question then becomes whether that facilitation is prohibited under [31 CFR] 560.208/560.417, as interpreted by OFAC."

Mr. Fischer further points out that while CF US's function of printing and mailing invoices could be seen as clerical, it could also be seen a furthering financial transactions in Iran if the paid staff is assisting the collection of money that would be transferred to Iran in cash.  Clearly then, if ITEM 3(b) may be considered a violation of the citations then ITEMS 3(a) and 3(c) may also be considered such a violation.

ITEM 3(d), providing access to the CF US (Main Office) to CF Canada and CF Switzerland may be considered a violation of the citations if the hosting of the financial database facilitates the activities of CF Canada and CF Switzerland that CF US can not do directly.  The risk is that this access may be seen as providing assistance to further the activities of CF Canada and CF Switzerland in their relationship with CF Iran.

ITEM 3(e), the CF US Board of Directors controlling and directing the activities of CF Canada are clearly a violation of OFAC Regulations under the CFR that states in part…'unless licensed by OFAC, goods, technology (including technical data or other information subject to Export Administration Regulations), or services may not be exported, or re-exported [sic], sold or supplied, directly **or indirectly** , from the United States or by a US person, **wherever located,** to Iran or the Government of Iran.  The ban on providing services **includes any brokering function from the United States or by US persons, wherever located.**  For example, a US person, wherever located, or any person acting within the United States, may not broker offshore transactions that benefit Iran or the Government of Iran, including sales of foreign goods or arranging for third-country financing or guarantees.'

This, in and of itself should serve notice to the CF US Board of Directors that they have been and continue to facilitate such transactions through its involvement of the decision making processes of CF Canada.

## ITEM 4 - REMOTE CONNECTIVITY TO CF IRAN TO CF US SERVER

ITEMS 4(a) and (b) address the connectivity with CF Iran through our private network connection.  Provided below is Mr. Fisher's Sep 27 06 e-mail response to the connectivity question that was posed to him:

"If the information relates solely to CF USA's (and other related organizations such as CICF) activities that are limited to donations of food and medicine purchased outside Iran, then exchanging information about how much of the donation each child is to receive would be permissible, since it is an auxiliary transaction to an exempted transaction.

"However, if the information relates to accounting and allocating any cash donations to children's accounts routed through CICF [CF Canada] or another non-US person directly to CF in Iran, that could be seen as furthering financial transactions involving Iran that CF USA could not engage in directly. Again, this is a tough call for us [Berliner, Corcoran & Rowe] to make without looking specifically at what CICF and the other foreign CF organizations are doing, and what information is on your servers.

Exhibit 19
Page 5 of 8

*"So the key issue is what the foreign organizations are doing – without a clear idea of that, we can't be much more specific. Even in that case, the lines are rather gray and fuzzy – which is in part intentional on the part of OFAC – they aren't really charged with making things easier for organizations like you. The conservative approach would be to disconnect CF USA from the management of any aspects of CICF or other CF foreign organizations, and to host all websites, etc. outside the USA."*

In regard to Mr. Fisher's analysis of the connectivity between CF US and CF Iran, it would be incumbent upon the Board of Directors of CF US to provide his office with the correct information for him to clearly assess and provide legal guidance in this matter.

INTERNAL REVENUE SERVICE

All 501(c)(3) non-profits are governed and in effect licensed by the Internal Revenue Service to operate as not-for-profit entities. In so doing, the IRS essentially certifies, through governing rules, regulations and reporting requirements, the conduct and fiduciary responsibilities of the non-profit community. Part of that fiduciary responsibility is to insure that the donations received by the non-profit are correctly recorded **and spent** in accordance with the wishes of the donor. If the non-profit is unable, for any reason, to fulfill that legal obligation, the recourse is to:

1) Directly notify the donor that the restriction on the donation that was received could not be met, then;
   a. Return the donation at the donor's request, or;
   b. Request the donor release the restriction in writing.

When the requirement of 1)b has been met, the non-profit is then under no restriction how those donated funds may be spent. Clearly this is not the case in some instances.

It has been my experience through sponsor/donor correspondence that checks have been sent by sponsors to CF US for purposes other than the their regular sponsorship of a child and those funds have been allocated and spent for purposes other than what the sponsor/donor has requested. For example, there have been recent instances where sponsors have sent checks to CF US requesting CF US to purchase air conditioners or refrigerators for the sponsored child or their family.

OFAC rules specifically state that only food, clothing and some medications may be sent to Iran for humanitarian relief. Following their guidelines, CF US can not and should not make attempts to provide these articles for the sponsor's child or family.

Instead, it has become the policy and practice of CF US to utilize these restricted funds for the purpose of providing humanitarian support through the items it can send to Iran. CF Iran is notified by CF US, through its server, that payments have been received by CF US for the benefit of a child or child's family **for the purchase of a restricted item.** CF Iran, then, assumes the obligation of CF US to fulfill that fiduciary obligation through other financial sources, one of which is CF Canada that is controlled by the CF US Board of Directors.

Exhibit 19
Page 6 of 8

Not only is CF US is in violation of IRS law and regulations governing the expenditure of restricted funds, but CF US, notably the Board of Directors is in violation of OFAC Regulations governing the facilitation of funds to Iran.

SUMMARY

This summary is divided into three parts. The first part relates to the Office of Foreign Asset Control, the second part relates to the Internal Revenue Service regulations as they relate to the management and fiduciary responsibility of restricted funds donated by sponsors and donors, and the third part restates the by-laws of Child Foundation US.

1)     OFFICE OF FOREIGN ASSET CONTROL

As presented and through support of Iranian Transaction Regulations, Title 31 Part 560 of the US Code of Federal Regulations (the "ITR"), the policies and operational procedures of CF US in its relationship with CF Canada and other CF organizations is not in compliance with OFAC rules and regulations that govern such transactions.

2)     INTERNAL REVENUE SERVICE

CF US provides a disclaimer in its promotional materials and through its website stating that although a sponsor/donor restricts its donation, CF US reserves the right to remove that restriction at its discretion. This does not hold true to the meaning of the IRS Regulations.

Although the accounting governing body, Financial Accounting Standards Board (FASB) does not carry the weight of legislated law, the specter looms large in this matter when it comes to the tax filings to the IRS and audited financial statements provided to the public. Specific to this may be exceptions on the audited financial statements regarding how CF US accounts for and spends restricted funds. From an audit perspective, if the restrictions have not been met, then the financials should still show temporarily restricted net assets even if the cash was spent. If temporarily restricted net assets exceed the amount of total assets, a footnote would be required.

Additionally, and in more technical terms: 303.12 Returning Contributions. **A nonprofit organization may be required or asked to return a contribution if (a) it is unable to comply with donor restricti**ons, (b) the donor has changed his mind about giving to the organization, or (c) the nonprofit organization has received a court order requiring it to return the contribution. The authors anticipate that a return of a contribution would be infrequent. SFAS No. 116 does not directly address how to account for or report the return of a contribution. The authors believe that if a nonprofit organization returns a restricted donation received in a prior year, a loss should be recorded, since expenses may not be reported in the restricted net asset classes. If a restricted contribution is returned that was received in the current year, the nonprofit organization could decrease contribution revenue instead of recording a loss.

Exhibit 19
Page 7 of 8

Clearly, then, with the violation of IRS Rules governing restricted contributions the possibility does exist that CF US could lose its 501(c)(3) determination. If this happens, CF US could still function, but not gather or solicit donations in the same manner as it now does.

### 3)    CHILD FOUNDATION BY-LAWS

Section VI, Article 61, B a of the Child Foundation By-Laws state *"Persons covered by this Policy Statement serve CF as fiduciaries to the CF, its partner, ministries, to each other, and to the CF's donors. Such persons have an express obligation to conduct all affairs of CF in an upright, forthright and honest manner. Each person should make decisions using good business judgment, ethics and moral principles."*

Section VI, Article 76 of the Child Foundation By-Laws states *"The Board will insure that all business carried out by CF is in agreement with all applicable federal, state, and local laws."*

I would suggest to the Board that these in and of themselves, regardless of what one may consider 'grey areas of the law', the Board is currently in violation of 1) their fiduciary responsibility to their sponsors/donors, and; 2) is in violation of their own by-laws.

### RECOMMENDATIONS

It was my intent in preparing this document for your review to provide you with a list of recommendations and a timeline in which to implement them.

At this point in time, I am unsure whether or not the CF US Board of Directors is in hearing about any recommendations to bring the agency into compliance, or if so, of the mind to restructure the agency into one that would be in compliance with Federal, State or Local laws, IRS Rules and Regulations, and with it's own by-laws.

At the reading of this, and at the instruction of the Board of Directors, I would be willing to provide you with such recommendations and a schedule for implementation. It would require, however, the Board of Directors to have a commitment and determination to provide the resources, financial and materially, to implement any such restructuring.

Respectfully Submitted,


David Kirkwood, Manager
Child Foundation

Exhibit 19
Page 8 of 8