---

**From:** Ahmad Iranshahi [mailto:ah_iran@yahoo.com]
**Sent:** Friday, June 05, 2009 2:55 AM
**To:** Yasrebi, Mehrdad
**Subject:** Re: Audited Reports


--- On **Wed, 6/3/09, Yasrebi, Mehrdad <*MYasrebi@pccstructurals.com*>** wrote:


**From:** Masoud Modarres
**To:** Ahmad Iranshahi
**Cc:** Mehrdad Yasrebi
**Sent:** Thursday, July 02, 2009 8:22 PM
**Subject:** Azad University

In this e-mail, Masoud Modarres says that based on Yasrebi's request to find a way to get discounts in the tuition of college students under the CF coverage, who attend Islamic Azad University, he would like to know about Iranshahi's past endeavors and experiences regarding this subject. Modarres is asking Iranshahi to share his communications regarding this subject via e-mail.

Modarres continues that his friend, Dr. Foroughi, who is the President of the Islamic Azad University of Esfahan, cannot give more than 15% discount...and that Modarres is trying to get in touch with his other friend, Dr. Mohammadi, the Vice President of all Azad universities, and needs his phone number and/or e-mail address...he is asking for Iranshahi's help in this regard.

Modarres is also asking for the names of the branches of Azad University, where the Foundation college students are attending...


**From:** Ahmad Iranshahi
**To:** be_kg@yahoo.com
**Sent:** Saturday, May 23, 2009 6:23 AM
**Subject:** Damavand Star

In this e-mail, Iranshahi orders the sum of \$98,550.32 (362000 dirham) be deposited to the Dubai Commercial Bank and then withdrawn from the same account...and after co-ordination with Damavand Company, the sum of \$122,507.31 (450,000 dirham) be deposited to Damavand's account for the purchase of food items.

From:     "Masoud Modarres" <modarres@childfoundationusa.org>
To:       "Ahmad Iranshahi" <ah_iran@yahoo.com>
Cc:       "Mehrdad Yasrebi" <myasrebi@childfoundation.org>
Sent:     Thursday, July 02, 2009 4:22 PM
Subject:  Azad University

جناب آقای ایرانشاهی

با سلام

محترما به استحضار میرساند بدنبال درخواست آقای یثربی مبنی بر پیدا نمودن راهی جهت تخفیف گرفتن برای شهریه
دانشجویان بنیاد کودک که در دانشگاه آزاد اسلامی ایران تحصیل میکنند، اینجانب با آقای دکتر فروغی که ریاست دانشگاه
آزاد اسلامی خوراسگان در اصفهان را بعهده دارد تماس گرفتم. ایشان که از دوستان قدیمی من میباشند گفتند که برای وی
ارائه تخفیف به میزانی بیش از 15 درصد مقدور نیست ولی میتوانند با آقای دکتر جاسبی در این خصوص صحبت کند تا
شاید بتوان راه حلی مناسبی برای این مسئله یافت.
باتوجه به اینکه ظاهرا جنابعالی یکبار این راه را رفته اید و مکاتباتی نیز در این خصوص انجام داده اید خواهشمند است در
صورت امکان نسخه ای از آن مکاتبات را از طریق ائی میل برایم ارسال فرمائید. ضمنا بفرمائید که قبلا با چه افرادی در
تماس بوده اید و چه نتایجی از آن کسب شده است.
همچنین لطفا اعلام فرمائید که در حال حاضر چه تعدادی از دانشجویان بنیاد، در کدام یک از شعبات دانشگاه آزاد به
تحصیل اشتغال دارند.
ظاهرا معاونت بین الملل دانشگاه هم اخیرا عوض شده و آقای دکتر محمدی (که او هم از آشنایان اینجانب میباشد) هم اکنون
تصدی این معاونت را بعهده دارد که میتوان از طریق ایان هم مسئله را پیگیری نمود. لطفا در صورت امکان شماره تلفن و
یا ائی میل ایشان را نیز برایم تهیه فرمائید.

با تشکر فراوان

مسعود مدرس

Best Regards

Masoud Modarres, MPA
Executive Manager
**Child Foundation**
modarres@ChildFoundationUSA.org
Tel: (503) 698-4084 • Fax: (503) 297-1546
P. O. Box 463 • Portland, OR 97207
www.childfoundation.org

*Changing the face of the future..., One Child at a time*

Tab 65
Page 2 of 2

2/27/2012

```
          13:29    TECS II - REPORT OF INVESTIGATION NARRATIVE         062707  T2MQ5206
TID= N5B5                                                                      T2PQ5215
REPORT ID:  PT02DE01PT0001010
*******************************   NARRATIVE   *****************   PAGE    1 OF  24
```

DETAILS OF THE INVESTIGATION
This investigation was predicated on information received as a result of an
ongoing Joint Terrorism Task Force (JTTF) investigation on CHILD FOUNDATION
and Mehrdad YASREBI (DPOB/ 10011957, Iran, alien file/A72 146 056).   YASREBI
is a Lawful Permanent Resident alien who obtained his lawful status on
December 15, 1992.    The CHILD FOUNDATION is a non-profit organization in the
State of Oregon that purports to be in existence to provide relief to orphans
in Iran.

Records obtained from the Oregon Secretary of State Corporation Division
indicated that CHILD FOUNDATION was incorporated under the Oregon Nonprofit
Corporation Act on May 18, 1994, registered number 399323-89.   On April 10,
1995 the registered agent's address was changed to:  12959 SE Kathryn Ct.,
Clackamas, Oregon 97015.   CHILD FOUNDATION filed its 2005 Annual Report on

```
(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN)  (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)
```

Tab 66
Page 1 of 24

Case 3:05-cr-00413-KL   Document 62-2   Filed 03/06/12   Page 4 of 45   Page ID#: 1511

April 13, 2005.  This document showed the Registered Agent as Mehrdad YASREBI at 2959 SE Kathryn Ct., Clackamas, Or and a PO Box of 1364, Clackamas, OR 97015 for the CHILD FOUNDATION.  Fatemeh Sharif-Kazemi (YASREBI's wife) was listed as an Associate name at the same PO Box.

The Articles of Incorporation were filed with the Secretary of State Corporation Division on May 18, 1994 and show the registered agent as Mehrdad YASREBI, at 9750 SE Talbert, Clackamas, OR and PO Box 1364, Clackamas, OR. Article 6 lists Distribution of assets on dissolution or final liquidation: Alavi Foundation, NY, NY.

Article 7 listed three directors and their addresses:  Mehrdad YASREBI, Fatemeh Sharif-Kazemi and Asad Azemi all at PO Box 862, Clackamas, OR.

An Articles of Amendment was filed on January 17, 1995 and included the PO Box

(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 2 of 24

```
             13:29    TECS II - REPORT OF INVESTIGATION NARRATIVE        082707 T2MQ5206
TID= N5B5                                                                       T2PQ5215
REPORT ID:  PT02DE01PT0001010
******************************  NARRATIVE  ****************  PAGE   3 OF  24
```

1707, Beaverton, Oregon 97075 as a contact address for CHILD FOUNDATION.  This
was filed and signed by Incorporator Mehrdad YASREBI.

In approximately February 2000, an Italian company, Lo Guidice found a company
via the Internet named IRAN FARAS, No. 25, 4th Floor, Passaje-Mirdamad, Madar
Sq. Farnaz St.,  Mirdamad Ave., Tehran, Iran (98)-21-2250304.  Lo Guidice
offered to sell IRAN  FARAS a container of Formica laminate sheets.  IRAN
FARAS agreed to purchase a container of Formica laminate sheets for $22,500.
In approximately April of   2000, the money for the purchase was sent from a
bank in Germany to an account owned by Italcom SAS.  The laminate sheets were
sent from the Port at Genoa, Italy, to Bandar Abbas, Iran.


On February 14, 2001, Farad RAHMATI, of IRAN FARAS contacted Lo Guidice via
fax.


(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN)  (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 3 of 24

```
          13:29   TECS II - REPORT OF INVESTIGATION NARRATIVE        062707 T2MQ5206
TID= N5B5                                                                  T2PQ5215
REPORT ID:  PT02DE01PT0001010
*****************************  NARRATIVE  *****************  PAGE   4 OF  24
```

RAHMATI indicated that IRAN FARAS wished to purchase an additional order of ●●●●ca laminate sheets.  RAHMATI indicated that he would transfer $22,500 f●●m an account in the U.S.A. to pay for the order.  RAHMATI told Lo Guidice that all documents on the shipment must indicate that they are being sent to the DOKLAN COMPANY, Tehran, Iran, 0098-21-8956271.  RAHMATI disclosed that the receiver would be the DOKLAN COMPANY and not IRAN FARAS.

On February 20, 2001, a wire transfer of $20,935.16 was sent from Bank of America, New York, account number 2892808450, to the Italcom SAS account at Banca Nazione del Lavoro, Cuneo, Italy.  (Agents Note: The account at the Bank of America is registered to the CHILD FOUNDATION, PO Box 1787, Beaverton, OR 97075)  On that same date, a second wire transfer of $1,564.84 was sent from the Bank of America account, to the Banca Nazione del Layoro account.

```
(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)
```

Tab 66
Page 4 of 24

```
        13:29   TECS II - REPORT OF INVESTIGATION NARRATIVE        082707 T2MQ5206
TID= N5B5                                                                   T2PQ5215
REPORT ID:  PT02DE01PT0001010
*******************************  NARRATIVE  *****************  PAGE   5 OF  24
```

On April 18, 2001, Italcom SAS shipped one container of Formica laminate
sheets from the Port of Genoa, Italy, to the Port of Bandar Abbas, Iran, via
the vessel Jolly Platino.  The bill of lading indicates that the consignee of
the shipment is the DOKLAN COMPANY, Tehran, Iran.

In furtherance of the Child Foundation investigation, AUSA Charles Gorder
forwarded a Mutual
Legal Assistance Treaty (MLAT) request to Italy requesting judicial assistance
in obtaining bank records relating to a bank account with an Italian bank,
i.e. Banca Nazionale del Lavoro, Cuneo, Italy, in the name of Aldo Giudice,
and the interview of this person.  The account had received a $22.500 transfer
from Child Foundation on or about February 15, 2001.

The following information was taken from a Report of Investigation written by
SSA Dario D'Andrea and is included in substance:


(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 5 of 24

Case 3:05-cr-00413-KL   Document 62-2   Filed 03/06/12   Page 8 of 45   Page ID#: 1515

On September 24, 2002, Mr. Aldo Lo Giudice, DBA ITALCOM SAS, was
interviewed by SSA Jacob Dye, IRS SA Mike Riley and SSA Dario D'Andrea
in the offices of the Court House in Alba by Judge Gnocchi in execution
of the MLAT filed by AUSA Charles Gorder of the Judicial District of
Oregon.  Mr. Lo Giudice indicated that ITALCOM SAS trades in wood and
plastic finishings and fittings for furniture.  The transaction in
question involved the payment for a container of formica in sheets sold
to the business IRAN FARAS in Teheran, Iran.  Mr. Lo Giudice indicated
that it is not unusual to receive payment from a United States bank
when doing business with countries not having a strong currency.  Mr.
Lo Giudice turned over all documents in his possession regarding the
transaction.

On September 25, 2002, the aforementioned agents met with Judge


(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 6 of 24

Case 3:05-cr-00413-KI    Document 62-2    Filed 03/06/12    Page 9 of 45    Page ID#: 1516

13:29    TECS II - REPORT OF INVESTIGATION NARRATIVE    062707    T2MQ5206
                                                                  T2PQ5215
TID= N5B5
REPORT ID:  PT02DE01PT0001010
******************************** NARRATIVE **************** PAGE   7 OF 24



Cacciopoli in the Court House in Cuneo.  Judge Cacciopoli examined with
the agents the records he subpoenaed from the Banca Nazionale del
Lavoro.  The perusal identified the subject incoming wire transfer from
Child Foundation but revealed no additional undeveloped leads.  Judge
Cacciopoli advised that he would close the file.

The following information was obtained from a Report of Investigation written
by SSA Jacob Dye and is attached in substance:

On September 24, 2002, SSA Jacob Dye of the RAIC/Portland and IRS
Special Agent  Michael Riley, traveled to Alba, Italy, and met with
Aldo Lo Guidice, Roddi via Fontana #2, Alba, Italy, regarding a
financial transaction that he had conducted with the CHILD FOUNDATION.
The interview was conducted as part of a Mutual Legal Assistance Treaty
request from the United States Attorney's  Office, Portland, OR.  The

(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 7 of 24

Case 3:05-cr-00413-KI   Document 62-2   Filed 03/06/12   Page 10 of 45   Page ID#: 1517

interview was moderated by Italian GIP (Judge) Dr.  Carlo Gnocchi, with
the assistance of  Dario D'Andrea,  Customs Attach/ Rome acting as
translator.  Lo Guidice made the following statement in substance:

Lo Guidice operates a business named Italcom SAS, Via Crosetti
37, 12060 Roddi, Alba, Italy (39) 0173-620010, that sells
Formica laminate sheets.  Italcom SAS is a single proprietorship
that does most of its business with countries in Central
America, including Guatemala and San Salvador.  Additionally,
Italcom SAS has sold Formica to companies in Thailand and Hong
Kong.

(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 8 of 24

Case 3:05-cr-00413-KI   Document 62-2   Filed 03/06/12   Page 11 of 45   Page ID#: 1518

In approximately February 2000, Lo Guidice found a company via the Internet named IRAN FARAS, No. 25, 4th Floor, Passaje-Mirdamad, Madar Sq. Farnaz St.,  Mirdamad Ave., Tehran, Iran (98)-21-2250304.  Lo Guidice offered to sell IRAN  FARAS a container of Formica laminate sheets.  IRAN FARAS agreed to purchase a container of Formica laminate sheets for $22,500.  In approximately April of  2000, the money for the purchase was sent from a bank in Germany to an  account owned by Italcom SAS.  The laminate sheets were sent from the Port at Genoa, Italy, to Bandar Abbas, Iran.

On 2/14/01, Farad RAHMATI, of IRAN FARAS contacted Lo Guidice via fax.  RAHMATI indicated that IRAN FARAS wished to purchase an additional order of  Formica laminate sheets.  RAHMATI indicated that he would transfer $22,500 from an account in the


(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 9 of 24

U.S.A. to pay for the order.  RAHMATI told Lo Guidice that all documents on the shipment must indicate that they are being sent to the DOKLAN COMPANY, Tehran, Iran,  0098-21-8956271.  RAHMATI disclosed that the receiver would be the DOKLAN COMPANY and not IRAN FARAS.

On 2/20/01, a wire transfer of $20,935.16 was sent from Bank of America, New York, account number 2892808450, to the Italcom SAS account at Banca Nazione del Lavoro, Cuneo, Italy.  (Agents Note: The account at the Bank of America is registered to the CHILD FOUNDATION, PO Box 1787, Beaverton, OR 97075)  On that same date, a second wire transfer of $1,564.84 was sent from the Bank of America account, to the Banca Nazione del Layoro account.

(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 10 of 24

On 4/18/01, Italcom SAS shipped one container of Formica laminate sheets from the Port of Genoa, Italy, to the Port of Bandar Abbas, Iran, via the vessel Jolly Platino.  The bill of lading indicates that the consignee of the shipment is the DOKLAN COMPANY, Tehran, Iran.

Lo Guidice disclosed that he has not had any further contact with any representatives from IRAN FARAS or the DOKLAN COMPANY after he made the last shipment.  Lo Guidice stated that all correspondence between himself and Fahrad RAHMATI took place by fax or e-mail.  Lo Guidice stated that he has never corresponded with anyone from the CHILD FOUNDATION regarding the shipments of laminate, or the payments that were made from the Bank of

(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 11 of 24

America account.


Lo Guidice stated that Italcom SAS began the process of
dissolving as of March 2002, due to lack of business.

Pursuant to a Federal Grand Jury Subpoena, Dana Parks, Assistant Vice
President of Corporation Security for Bank of America located at 4310 SW
Macadam Ave., Portland, OR 97208 provided the original wire transfer request
as described. A Funds Transfer Request and Authorization Form detailing the
wire transfer of $22,500.00 from Bank of America Account Number 28928-08450
in the Requestor/ Originator name of name of Child Foundation, PO Box 1787,
Beaverton, OR 97075. This document was signed on February 15, 2001 by what
appears to be Abu Yasrebi.  The Transfer payment instructions detail the Title


(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 12 of 24

o  ame on the Debit Account as the Child Foundation and the name of person or
c  any receiving the funds as Mr. Aldo Guidice, Account #210087, Alba, Italy.

It appears that the wire transfer was split into two parts after it was
received by the Italian bank pursuant to a request from Lo Guidice.  There is
no evidence that there were two wire transfers sent to Italy from Bank of
America.

Bank of America further provided the bank signature card to Account
#28928-08450.  The Master Agreement Business Deposit Accounts Authorization is
signed, "Abu Yasrebi".  Partnership/Corporation business name is listed as
Child Foundation, Partner/Officer's name Mehrdad Yasrebi.  Tax Reporting
Information and Certification lists a social security number of  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
belonging to Mehrdad Yasrebi.   The authorized signatures listed on the

(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN)  (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 13 of 24

account are Mehrdad Yasrebi, ODL 5494402, 10/1/95, 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.  The signature below the name is Abu Yasrebi.  The account was opened 5/7/96.

The second signature card is dated May 15, 2001, as an update to the EIN.  Child Foundation is listed as the Business name and Mehrdad Yasrebi signed as the Executive director.  The Taxpayer ID is listed as 931148608, to Child Foundation.  The title of the account was Child Foundation at PO Box 1364, Clackamas, Oregon 97015.  Authorized signatures were listed as Mehrdad Yasrebi who signed Mehrdad Yasrebi and ODL 5494402 and social security number 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.

The third signature card provided by Bank of America was updated to show current ownership.  Child Foundation is listed as the Business name and Mehrdad Yasrebi signed as the Executive Director/ President.  His wife, Fatemeh Sharif-Kazemi signed as Secretary Treasurer/Finance Director. The

(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 14 of 24

Taxpayer ID is listed as 931148608, to Child Foundation.  The title of the
account was Child Foundation at PO Box 1364, Clackamas, Oregon 97015.
Authorized signatures were listed as Mehrdad Yasrebi who signed Mehrdad
Yasrebi and ODL 5494402 and social security number 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.

The President of the United States, by virtue of the International Emergency
Economic Powers Act, is granted authority to deal with unusual or
extraordinary threats to the national security and foreign policy of the
United States.  The Iranian Transactions Regulations give effect to Executive
Order 12957 (March 15, 1995), Executive Order 12959 (May 6, 1995), and
Executive order 13059(August 19, 1997)(clarifying E.O. 12957 and E.O. 12959).
The declarations of national emergency that underpin these executive orders
are in response to actions of the Government of Iran occurring after the
conclusion of the 1981 Algiers Accords.


(PF1=HELP)  (PF3=MAIN MENU)  (PF4=HIT LIST)  (PF7=PREV SCREEN)  (PF8=NEXT SCREEN)
(PF14=LINKLIST)  (PF15=PREV LINKLIST)  (PF16=PRINT RECORD)  (PF17=BASE RECORD)

Tab 66
Page 15 of 24

```
    13:30  TECS II - REPORT OF INVESTIGATION NARRATIVE        062707 T2MQ5206
TID= N5B5                                                            T2PQ5215
REPORT ID:  PT02DE01PT0001010
****************************   NARRATIVE   ****************  PAGE  16 OF  24
```

Title 31, U.S. Code of Federal Regulations, Part 560 Subsection  203
(Evasions, attempts), provides that:
    Any transaction by any United States person or within the United States
    that evades or avoids, or has the purpose of evading or avoiding, or
    attempts to violate, any of the prohibitions contained in this part is
    hereby prohibited.

Title 31, U.S. Code of Federal Regulations, Part 560 Subsection  208
(Prohibited facilitation by United States persons of transactions by foreign
persons), provides that:
    Except as otherwise authorized pursuant to this part, and
    notwithstanding any contract entered into or any license or permit
    granted prior to May 7, 1995, no United States person, wherever
    located, may approve, finance, facilitate, or guarantee any transaction
    by a foreign person where the transaction by that foreign person would

(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN)  (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST)  (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 16 of 24



be prohibited by this part if performed by a United States person or
within the United States.

Title 31, U.S. Code of Federal Regulations, Part 560 Subsection  206
(Prohibited trade-related transactions with Iran; goods, technology, or
services), provides that:
    (a) Except as otherwise authorized pursuant to this part, and
notwithstanding any contract entered into or any license or permit
granted prior to May 7, 1995, no United States person, wherever
located, may engage in any transaction or dealing in or related to:
(1) Goods or services of Iranian origin or owned or controlled by the
Government of Iran; or
(2) Goods, technology, or services for exportation, reexportation, sale
or supply, directly or indirectly, to Iran or the Government of Iran.
    (b) For purposes of paragraph (a) of this section, the term transaction


(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 17 of 24



or dealing includes but is not limited to purchasing, selling,
transporting, swapping, brokering, approving, financing, facilitating,
or guaranteeing.

Title 50, U.S. Code, Section 1702 provides in relevant part:
    (a)(1) At the times and to the extent specified in section 1701 of this
    title, the President may, under such regulations as he may prescribe,
    by means of instructions, licenses, or otherwise-
        *    investigate, regulate, or prohibit-
 (i) any transactions in foreign exchange,
               (ii) transfers of credit or payments between, by,
      through, or to any banking institution, to the extent that such
      transfers or payments involve any interest of any foreign
      country or a national thereof,
      *    the importing or exporting of currency or securities; and


(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 18 of 24

******************************  NARRATIVE  ****************  PAGE  19 OF  24

⬤
                        (B) investigate, regulate, direct and compel,
        nullify, void, use, transfer, withdrawal, transportation,
        importation or exportation of, or dealing in, or exercising any
        right, power, or privilege with respect to, or transactions
        involving, any property in which any foreign country or a
        national thereof has interestby any person, or with respect to
        any property, subject to the jurisdiction of the United States
Title 50, U.S. Code, Section 1705(b) provides in relevant part:
        (b) Whoever willfully violates, or willfully attempts to violate, any
        license, order, or regulation issued under this chapter shall, upon
        conviction, be fined not more than $50,000, or, if a natural person,
        may be imprisoned for not more than ten years, or both; and any
        officer, director, or agent of any corporation who knowingly
        participates in such violation may be punished by a like fine,
        imprisonment or both.


(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

⬤



⬤

Tab 66
Page 19 of 24



e 18, United States Code, Section 1956 provides in relevant part:
(a)(2) Whoever transports, transmits, or transfers, or attempts to
transport, transmit, or transfer a monetary instrument or funds from a
place in the United States to or through a place outside the United
States or to a place in the United States from or through a place
outside the United States
        (B) knowing that the monetary instrument or funds involved in
the transportation, transmission, or transfer represent the proceeds of
some form of unlawful activity and knowing that such transportation,
transmission, or transfer is designed in whole or in part
(i) to conceal or disguise the nature, the location, the source, the
ownership, or the control of proceeds of specified unlawful activity .
. . shall be sentenced to a fine of not more than $500,000 or twice the
value of the monetary instrument or funds involved in the

(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 20 of 24



transportation, transmission, or transfer, whichever is greater, or
imprisonment for not more than twenty years, or both.

On August 3, 2005 a request was sent to the ICE Exodus Command Center for an
OFAC licensing determination for the following entities:

        Aldo Lo Guidice
        Italcom SAS
        Farad RAHMATI
        IRAN FARAS
        CHILD FOUNDATION
        Mehrdad YASREBI
        DOKLAN COMPANY

A response was received on October 4, 2005 that OFAC searched their files from


(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 21 of 24

```
         13:30    IECS II - REPORT OF INVESTIGATION NARRATIVE    062707 T2MQ5206
TID= N5B5                                                                T2PQ5215
REPORT ID:  PT02DE01PT0001010
******************************    NARRATIVE  ****************    PAGE  22 OF  24
```

August 1995 until the present with no OFAC licenses filed under any of the
names with exception of the CHILD FOUNDATION.  They indicated that they found
a license issued to CHILD FOUNDATION, INC based on a January 14, 2004 letter
from the Law Offices of S. Shawn Khastoo, submitted on behalf of the CHILD
FOUNDATION, INC.  The License expired June 25, 2004 and was specifically
issued to the CHILD FOUNDATION to export 6000 donated backpacks containing
personal items to Iran for children who were victims of the earthquake in Bam.

OFAC found no other licenses ever issued to Mehrdad YASREBI, the CHILD
FOUNDATION or CHILD FOUNDATION, INC.


EXHIBITS/EVIDENCE


(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 22 of 24

```
    13:30   IECS II - REPORT OF INVESTIGATION NARRATIVE   062707 T2MQ5206
TID= N5B5                                                         T2PQ5215
REPORT ID:  PT02DE01PT0001010
*****************************   NARRATIVE   *****************   PAGE 23 OF 24
```

EXHIBIT  A   ICE/Immigration file for YASREBI/ A72 146 056, Citizenship and
Immigration Services

EXHIBIT  B   Corporation Documents for CHILD FOUNDATION from Secretary of State
Corporation Division

EXHIBIT  C -  ROI regarding MLAT written by SA Dario D'Andrea

EXHIBIT  D   ROI regarding interview with Aldo Lo Guidice

EXHIBIT  E   Documents obtained from MLAT to Italy

EXHIBIT  F   Wire Transfer from Bank of America

EXHIBIT  G   Signature cards for Child Foundation Acct from Bank of America


(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 23 of 24

EXHIBIT  H -  Licensing determination from Office of Foreign Asset Control

(PF1=HELP) (PF3=MAIN MENU) (PF4=HIT LIST) (PF7=PREV SCREEN) (PF8=NEXT SCREEN)
(PF14=LINKLIST) (PF15=PREV LINKLIST) (PF16=PRINT RECORD) (PF17=BASE RECORD)

Tab 66
Page 24 of 24

**CHILD FOUNDATION**

**Financial Statements and
Independent Auditor's Report**

**For the Year Ended
May 31, 2005**

Tab 67
Page 1 of 12

CF344807

**CHILD FOUNDATION**

**For the Year Ended May 31, 2005**

TABLE OF CONTENTS

Financial Statements:

Independent Auditor's Report on
Financial Statements………………………………………………………………………………………1

Statement of Financial Position……………………………………………………………………..……..2

Statement of Activities………………………………………………………………………………………3

Statement of Functional Expenses………………………………………………………………………..4

Statement of Cash Flows…………………………………………………………………………….…..…5

Notes to Financial Statements……………………………………………………………….…………..…6-10

Tab 67
Page 2 of 12

CF344808

# JONATHAN RESNICK, CPA
AN ACCOUNTANCY CORPORATION

2152 DUPONT DRIVE, SUITE 206
IRVINE, CA 92612
PHONE (949) 250-0852

## Independent Auditor's Report

To the Board of Directors
CHILD FOUNDATION

We have audited the accompanying statements of financial position of CHILD FOUNDATION (an Oregon non-profit corporation) as of May 31, 2005 and the related statements of activities, functional expenses and cash flows for the year then ended. These financial statements are the responsibility of the Organization's management. Our responsibility is to express an opinion on these financial statements based on our audit.

Except as noted in the following paragraph, we conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatements. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

We were unable to read the complete minutes of the board of directors which were drafted in Farsi, although we were provided access to brief summaries of those meetings.

In our opinion, except for the effects of such adjustments, if any, as might have been determined to be necessary had we been provided access to the complete minutes, the financial statements referred to above present fairly, in all material respects, the financial position of CHILD FOUNDATION as of May 31, 2005, and the changes in its net assets and its cash flows for the year then ended in conformity with accounting principles generally accepted in the United States of America.

Irvine, California
January 1, 2006

Tab 67
Page 3 of 12

CF344809

## CHILD FOUNDATION

## STATEMENT OF FINANCIAL POSITION

### May 31, 2005

| ASSETS | Unrestricted | | Temporarily Restricted | | Total | |
|---|---|---|---|---|---|---|
| Cash and cash equivalents | $ | 4,856 | $ | 58,133 | $ | 62,989 |
| Refund receivable | | - | | 150,000 | | 150,000 |
| Property and equipment (net) | | 2,147 | | - | | 2,147 |
| Deposits | | 335 | | - | | 335 |
| Total assets | $ | 7,338 | $ | 208,133 | $ | 215,471 |

LIABILITIES AND NET ASSETS

| LIABILITIES | | | | | | |
|---|---|---|---|---|---|---|
| Accounts payable and accrued expenses | $ | 21,521 | $ | - | $ | 21,521 |
| Refunds payable to donors | | 106,000 | | - | | 106,000 |
| Accrued payroll liabilities | | 5,577 | | - | | 5,577 |
| Total liabilities | | 133,098 | | - | | 133,098 |
| NET ASSETS (Deficiency) | | | | | | |
| Unrestricted | | (125,760) | | - | | (125,760) |
| Temporarily restricted | | - | | 208,133 | | 208,133 |
| Total net assets | | (125,760) | | 208,133 | | 82,373 |
| Total liabilities and net assets | $ | 7,338 | $ | 208,133 | $ | 215,471 |

CF344810

# CHILD FOUNDATION

## STATEMENT OF ACTIVITIES

### For The Year Ended May 31, 2005

|  | Unrestricted | Temporarily Restricted | Total |
|---|---|---|---|
| Revenues and support: |  |  |  |
| Public support: |  |  |  |
| Contributions | $ 179,186 | $ 6,458 | $ 185,644 |
| Contributions - children sponsorships | 1,365,028 | - | 1,365,028 |
| Special events | 121,720 | - | 121,720 |
| Less: Donor benefits | (103,856) | - | (103,856) |
| Total public support | 1,562,078 | 6,458 | 1,568,536 |
| Net assets released from restrictions: |  |  |  |
| Satisfaction of program restrictions | 37,845 | (37,845) | - |
| Total revenues, support and reclassifications | 1,599,923 | (31,387) | 1,568,536 |
| Expenses |  |  |  |
| Program services | 1,496,300 | - | 1,496,300 |
| Supporting services: |  |  |  |
| Management and general | 150,005 | - | 150,005 |
| Fund-raising | 94,758 | - | 94,758 |
| Total expenses | 1,741,063 | - | 1,741,063 |
| Change in net assets | (141,140) - | (31,387) - | (172,527) |
| Beginning net assets | 28,094 | 239,520 | 267,614 |
| Prior period adjustment | (12,714) | - | (12,714) |
| Beginning net assets, as restated | 15,380 | 239,520 | 254,900 |
| Ending net assets (deficit) | $ (125,760) | $ 208,133 | $ 82,373 |

# CHILD FOUNDATION

## STATEMENT OF FUNCTIONAL EXPENSES

### For The Year Ended May 31, 2005

| | Program Svcs | Supporting Services | | | |
| | Programs | Mgmnt. & General | Fund- raising | Sub- Total | Total |
|---|---|---|---|---|---|
| Accounting | $ - | $ 24,906 | $ - | $ 24,906 | $ 24,906 |
| Bank and merchant fees | | 8,589 | 156 | 8,745 | 8,745 |
| Contract labor | 8,476 | 8,652 | 6,957 | 15,609 | 24,085 |
| Depreciation | - | 1,000 | - | 1,000 | 1,000 |
| Donor Benefits | - | - | 103,856 | 103,856 | 103,856 |
| Fundraising | | - | 21,597 | 21,597 | 21,597 |
| Grants (note 10) | 1,365,029 | - | - | - | 1,365,029 |
| Licenses | - | 8,220 | - | 8,220 | 8,220 |
| Miscellaneous | 1 | 2,831 | 953 | 3,784 | 3,785 |
| Occupancy | 2,182 | 5,876 | 2,196 | 8,072 | 10,254 |
| Office supplies | - | 2,754 | 689 | 3,443 | 3,443 |
| Outside services | 2,851 | 4,751 | 1,900 | 6,651 | 9,502 |
| Payroll taxes | 5,069 | 5,174 | 4,160 | 9,334 | 14,403 |
| Postage | - | 2,295 | 9,182 | 11,477 | 11,477 |
| Printing | - | 792 | 15,048 | 15,840 | 15,840 |
| Professional fees | 12,036 | 19,450 | - | 19,450 | 31,486 |
| Projects (note 9) | 63,459 | 4,393 | - | 4,393 | 67,852 |
| Salaries and wages | 37,197 | 37,967 | 30,531 | 68,498 | 105,695 |
| Taxes | - | 9,802 | 1,389 | 11,191 | 11,191 |
| Travel | - | 2,553 | - | 2,553 | 2,553 |
| | 1,496,300 | 150,005 | 198,614 | 348,619 | 1,844,919 |
| Less: Donor benefits | | | (103,856) | (103,856) | (103,856) |
| Total expenses included in the expense section of the statement of activities | $ 1,496,300 | $ 150,005 | $ 94,758 | $ 244,763 | $ 1,741,063 |
| Percent of total | 85.9% | 8.6% | 5.4% | 14.1% | |

# CHILD FOUNDATION

## STATEMENT OF CASH FLOWS

### For The Year Ended May 31, 2005

CASH FLOWS FROM OPERATING ACTIVITIES:

| | | |
|---|---:|---:|
| Decrease in net assets | $ | (172,527) |

Adjustments to reconcile net income to net
cash provided (used) by operating activities:

| | |
|---|---:|
| Depreciation | 999 |
| Change in assets and liabilities: | |
| Refunds receivable | (150,000) |
| Deposits | (335) |
| Accounts payable and accrued expenses | 21,520 |
| Refunds payable | 106,000 |
| Accrued payroll taxes | 5,577 |
| NET CASH PROVIDED (USED) BY OPERATING ACTIVITIES | (188,766) |

| | |
|---|---:|
| CASH FLOWS FROM INVESTING ACTIVITIES: | |
| Purchase of fixed assets | (3,146) |
| NET CASH PROVIDED (USED) BY INVESTING ACTIVITIES | (3,146) |

| | |
|---|---:|
| NET INCREASE (DECREASE) IN CASH AND CASH EQUIVALENTS | (191,912) |
| CASH AND CASH EQUIVALENTS AT BEGINNING OF YEAR | 254,900 |
| CASH AND CASH EQUIVALENTS AT END OF YEAR | $ 62,988 |

CF344813

## CHILD FOUNDATION

## NOTES TO THE FINANCIAL STATEMENTS

### For the Year Ended May 31, 2005

### Organization and Nature of Services

Child Foundation is a non-profit organization formed in 1994 with the simple objective of helping children stay in school. This is achieved by providing food, shelter, clothing, educational needs, medical help, and other services to talented, needy children.

Child Foundation will be referred to as "the Organization" throughout the following notes.

### NOTE 1: SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

The following is a summary of the significant accounting policies of the Organization:

### Financial Statement Presentation

The accompanying financial statements have been prepared on the accrual basis of accounting in accordance with accounting principles generally accepted in the United States of America. Net assets and revenues, expenses, gains and losses are classified based on the existence or absence of donor-imposed restrictions. Accordingly, net assets of the Organization and changes therein are classified and reported as follows:

Unrestricted net assets represent resources whose use is not limited or restricted by donors.

Temporarily restricted net assets represent resources whose use is limited by donors for the purpose and/or time in which they may be expended. Temporarily restricted net assets are reclassified to unrestricted as their time/and or purpose requirements are met. Temporarily restricted contributions whose restrictions are met in the same reporting period are reported as unrestricted support.

Permanently restricted net assets represent resources subject to donor-imposed stipulations that the corpus be maintained permanently by the Organization. Generally, the donors of these assets allow the Organization to use all or part of the income earned on any related investments for general or specific purposes. The Organization had no permanently restricted net assets at May 31, 2005.

### Use of Estimates

The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosures of contingent assets and liabilities at the date of the financial statements. Estimates also affect the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

Tab 67
Page 8 of 12

CF344814

**CHILD FOUNDATION**

**NOTES TO THE FINANCIAL STATEMENTS- Continued**

**For the Year Ended May 31, 2005**

**Cash and Cash Equivalents**

For purposes of the Statement of Cash Flows, management considers all unrestricted highly liquid investments with an initial maturity of three months or less to be cash equivalents.

**Property and Equipment**

The Organization follows the practice of capitalizing all material expenditures for furniture and equipment.

Depreciation is recorded on the straight-line basis over the estimated useful lives of the property. The useful lives used to depreciate assets are as follows:

| | |
|---|---|
| Furniture and equipment | 5-7 years |

**Expense Allocation**

The costs of providing the various services and activities have been summarized on a functional basis in the Statement of Activities and in the Statement of Functional Expenses. Accordingly, certain costs have been allocated among the programs and supporting services benefited. Employee related expenses are allocated among program and support services based on related salary expenses.

**Income Taxes**

The Organization is exempt from federal income taxes under the 501(c)(3) provisions of the Internal Revenue Code. No provision for income tax liability is therefore required. The Organization has also been classified as an entity that is not a private foundation within the meaning of Section 509(a) and qualifies for deductible contributions as provided in Section 170(b)(1)(A)(vi).

**Donated services**

Many individuals volunteer their time and perform a variety of tasks that assist the Organization with specific program and fundraising events. No amounts have been reflected in the financial statements for these donated service because the criteria for recognition of such volunteer effort has not been met.

CF344815

**CHILD FOUNDATION**

**NOTES TO THE FINANCIAL STATEMENTS- Continued**

**For the Year Ended May 31, 2005**

## NOTE 2:  FIXED ASSETS

Property and equipment and leasehold improvements consist of the following:

|  | 2005 |
|---|---|
| Furniture and equipment | $    3,146 |
| Less accumulated depreciation | (999) |
|  | $    2,147 |

## NOTE 3: OTHER RECEIVABLE AND REFUNDS PAYABLE

The Organization has a receivable in the amount of $150,000 from the International Network for Cancer Treatment and Research that represents the refund of a grant made to that organization for research that will not be performed. The Organization has a liability for $106,000 to refund a contribution to a donor. The donation was originally made for the purpose of funding the construction of a school. That project has been postponed and the donor was refunded the donation in August 2005.

## NOTE 4: OBLIGATIONS UNDER OPERATING LEASES

The Organization has an operating lease for its business office. Rent expense under the lease totaled $4,055 for the year ended May 31, 2005.

Future minimum rental commitments as of May 31, 2005 are as follows:

| Year | Amount |
|---|---|
| 2006 | $    4,426 |
| 2007 | 7,721 |
| 2008 | 7,952 |
| 2009 | 3,354 |
|  | $ 23,453 |

## NOTE 5:  RELATED PARTY TRANSACTIONS

The Organization collects donations and child sponsorships in the United States for program services that are provided nationally and internationally. A large portion of the funds collected in the United States is granted to Bonyad Kudak, a registered Swiss charity. For the year ended May 31, 2005, $1,311,000 was wired to Bonyad Kudak and reported as grants expense on the statement of functional expenses.

Tab 67
Page 10 of 12

CF344816

## CHILD FOUNDATION

## NOTES TO THE FINANCIAL STATEMENTS- Continued

### For the Year Ended May 31, 2005

### NOTE 6: PRIOR PERIOD ADJUSTMENTS

Net assets at June 1, 2004 were decreased by $12,714 to correct posting errors made in the prior year that overstated security deposits by $3,000 and overstated cash by $9,714. The adjustment increases 2003/2004 expenses by $12,714.

### NOTE 7: PROGRAMS

Sponsorships. As of May 31, 2005, there were over 3,000 families, including 5,000 children under coverage. Talented, needy children are identified through schools and local charity organizations. Volunteer social workers visit the families and prepare detailed reports of the child's life and the family's financial situation.

Indonesia. The sponsorship program has been extended to orphan children living close to Jakarta. Shelter, food, clothing and educational needs of the children are provided through this program.

Children With Medical Needs. Under this program, children with medical needs receive help towards the required treatments. Child Foundation has a long history of supporting children needing major surgeries and fighting cancer.

Children fighting cancer who are able to go to school or a sibling meeting the requirements of Child Foundation are referred for sponsorship. This program provides relief for families who are burdened by having to care for the special needs of their child fighting cancer. In most cases, families are not able to provide for the needs of their other children

### NOTE 8: RESTRICTIONS ON NET ASSETS

Temporarily restricted net assets consist of the following:

| | Benjamin Fund | Parto Fund | Bam and Ghazvin Earthquake Funds | Total Temporarily Restricted |
|---|---|---|---|---|
| Beginning balance - June 1, 2004 | $  37,735 | $  9,564 | $  192,221 | $  239,520 |
| Contributions | 4,500 | - | 1,958 | 6,458 |
| Subtotal receipts & pledges | 42,235 | 9,564 | 194,179 | 245,978 |
| Funds expensed (release from restrictions) | - | (9,024) | (28,821) | (37,845) |
| Ending balance – May 31, 2005 | $  42,235 | $  540 | $  165,358 | $  208,133 |

CF344817

## CHILD FOUNDATION

## NOTES TO THE FINANCIAL STATEMENTS- Continued

### For the Year Ended May 31, 2005

### NOTE 9 –PROJECTS

Projects reported on the statement of functional expenses consist of the following:

| | |
|---|---:|
| Indonesian Children | $   23,000 |
| Iran and Afghanistan Children - food purchased | 10,000 |
| Cancer program - vehicle purchased for family receiving assistance under the program | 6,625 |
| Children and family support payments – U.S. | 11,068 |
| Miscelaneous direct program expenditures – U.S. | 12,766 |
| Total | $   63,459 |

### NOTE 10 – GRANTS

The Organization approved and disbursed the following grants to other charities during the 2004/2005 fiscal year.

| | |
|---|---:|
| Bonyad Kudak – Switzerland | $   1,311,000 |
| Mother & Child Charity – London, England | 5,400 |
| Operation USA/Iranian American Medical Association | 35,000 |
| World Hearing Organization | 7,500 |
| Doctors Without Borders | 750 |
| Leukemia Lymphoma Society | 1,000 |
| Unicef USA | 1,000 |
| International Orphan Care | 2,980 |
| Miscellaneous under $1,000 | 399 |
| Total | $   1,365,029 |

Grants to Bonyad Kudak consist primarily of child sponsorship donations.

Tab 67
Page 12 of 12

CF344818

This email is from *Office Work Group Team* to ***ah_iran@yahoo.com*** *on November 6, 2005* at *5:26 AM*.

Saremi sends Mr. Lahiji's [SP] account summary to Mr. Iranshahi as follows:

**Account Summary for Mr. Lahiji in Tehran Offices**

| Date | Description | Amount $ | Amount Rial | Remarks |
|------|-------------|----------|-------------|---------|
| Oct. 2000 | Purchased house | 250,000 | 2,000,000,000 | Till the end of 2011 |
| Feb. 2003 | Khoms [a fifth] | 250,000 | 1,997,250,000 | Khatam –e-Shiraz complex & Foundation expenses |
| May 2003 | Cash | 350,000 | 2,853,200,000 | May 2008 |
| April 2004 | Cash | 350,000 | 2,997,400,000 | Till April 2009 |

Address: 20 Golzar Alley, Golshan Street, Khoramshahr [SP] Avenue

Phone: 8502182-4

Fax: 8764771

Email: ***iranoffice@childf.com*** and ***www.childf.com***

Tab 68
Page 1 of 3

CF288876

**Subject:** Mr. Lahiji
**From:** "Office WorkGroup Team " <iranoffice@childf.com>
**Date:** Sun, 6 Nov 2005 04:26:29 -0600
**To:** <ah_iran@yahoo.com>

Jenab Agae Iranshahi
peyvast marbot be list Mr. Lahiji mibashad.
Saremi

| | | |
|---|---|---|
| **lahiji.jpg** | **Content-Type:** | application/octet-stream |
| | **Content-Encoding:** | base64 |

Tab 68
Page 2 of 3
8/4/2010 3:47 PM

CF288877

بسمه تعالی

بنیاد کودک
**Child Foundation**



وضعیت حساب آقای لاهیجی در دفاتر ایران

| ملاحظات | مبلغ(ریال) | مبلغ(دلار) | شرح | تاریخ |
|---|---|---|---|---|
| تاپایان سال۱۳۸۹ | ۲,۰۰۰,۰۰۰,۰۰۰ | ۲۵۰,۰۰۰ | خرید منزل | ۷۹/۷ |
| (مجتمع خاتم شیراز و هزینه های بنیاد) | ۱,۹۹۷,۲۵۰,۰۰۰ | ۲۵۰,۰۰۰ | خمس | ۸۱/۱۲ |
| تا خرداد ۱۳۸۷ | ۲,۸۵۳,۲۰۰,۰۰۰ | ۳۵۰,۰۰۰ | نقد | ۸۲/۳ |
| تا اردیبهشت ۱۳۸۸ | ۲,۹۹۷,۴۰۰,۰۰۰ | ۳۵۰,۰۰۰ | نقد | ۸۳/۲ |



تلفن : ۸۵۰۲۱۸۲-۴    آدرس: تهران- خ خرمشهر- خ گلشن- ک گلزار- پلاک۲۰

فاکس: ۸۷۹٤۷۷۱

E- mail: iranoffice@childf.com
www.childf.com

Tab 68
Page 3 of 3

CF288878



**RAMAK GENERAL TRADING CO.**

ORIGINAL

# COMMERCIAL INVOICE

**Messers:** M/S. CHILD FUNDATION CHARITY
I. R. Of. IRAN

**Date:** 23/08/2007
**Invoice No:** DEX715

| ITM | DESCRIPTION | PACKING | QTY (CTN) | UNIT PRICE (USD) | TOTAL PRICE (USD) |
|-----|-------------|---------|-----------|------------------|-------------------|
| 1 | GOLDEN MAIZE CORN OIL 2 LITER. | 6x2 liter HDPE & PET | 21,389 | 7.50 | 160,417.50 |
| 2 | GOLDEN MAIZE CORN OIL 750 ML. | 12x750 ml. PET | 2,000 | 6.00 | 12,000 |

| TOTAL AMOUNT C&F KISH, IRAN: USD.ONE HUNDRED SEVENTY TWO THOUSAND FOUR HUNDRED SEVENTEEN AND FIFTY CENTS ONLY. | 172,417.50 |
|---|---|

| SHIPMENT | DUBAI TO KISH FREE ZONE, IRAN BY SEA. |
|---|---|
| NET WEIGHT | 250,000 Kg. |
| PAYMENT | CASH |
| ORIGIN | UAE |
| G.M.P. No. | 240/1 IRANIAN MINISTRY OF HEALTH |
| PACKING | 1x6x2liter HDPE & 1x12x750ml. PET |
| MANUFACTURE | EMIRATES REFINING CO. LIMITED – SHARJAH. |

for RAMAK General Trading Co. L.L.C.
Dubai

**RAMAK**

فاکتور اصلی بابر ترخیص
کالا بدلار که نیت کان
نین سرمه که بس دارد

RAMAK GENERAL TRADING COMPANY L.L.C.
P.O. BOX: 4091 DUBAI - UAE

Tab 69
Page 1 of 2

CF328092

File number:
Recording number:
Date recorded:

Page. 1

The original invoice for release of goods in dollar, and its opposite side  has the chamber of commerce seal.

**Page. 7**

In God Name

Tab 69
Page 2 of 2

CF328093

**RAMAK GENERAL TRADING CO. L.L.C.**
P.O. BOX: 4091 DUBAI - UAE
Email: ramaxco@yahoo.com
TEL: 04 2257725
FAX: 04 2257334
SHOWROOM: 04 2350380



شركة رامك للتجارة العامة(ش.ذ.م.م.)

# INVOICE

| BUYER: | M/S. CHILD FUNDATION I.R.O. IRAN. | | INVOICE NO | DEX715C |
|---|---|---|---|---|
| | | | DATE: | 26/08/2007 |
| | | | SALESMAN: | |

| REF | DESCRIPTION | PACKING | QTY | RATE | AMOUNT |
|---|---|---|---|---|---|
| 1 | GOLDEN MAIZE CORN OIL 2 LITER.(HPDE & PET) | 6 x 2 liter | 21,389 | 60.00 | 1,283,340.00 |
| 2 | GOLDEN MAIZE CORN OIL 750 ML. (PET) | 12x750ml. | 2,000 | 46.00 | 92,000.00 |

فاكتورامادى قيت

1375340

ريال 1440000/

| TOTAL AED. ONE MILLION THRE~~...~~FORTY ONLY. | 1,375,340.00 |
|---|---|

PAYMENT TERMS:

 - PLEASE CHECK THE GOODS AT THE TIME OF DELIVERY
 - GOODS ONCE SOLD WILL NOT BE TAKEN BACK OR EXCHANGED.

REMARKS:

**RAMAK**

BUYER'S SIGNATURE
Name/Stamp

For RAMAK GENERAL TRADING Co. L.L.C.

Tab 70
Page 1 of 2

CF328098



**Page. 4**

Original Invoice, price 1,375,340
1,440,000 dirham [UEA currency $1=3.67 dirham]

Tab 70
Page 2 of 2

CF328099